BRIDGET O'BRIEN, *et al.,* v. JOHN M. WETHERELL.

1. EJECTMENT, *by Grantor against Grantee; Breach of Condition; When Defendant may not Deny that his Grantor had Title.* Where the defendants hold their entire title and possession to a certain piece of land from and under the plaintiff, and hold the same upon the express condition that no intoxicating liquors shall ever be sold upon the premises, and are to forfeit the premises back to the plaintiff whenever such condition shall be broken, the defendants are estopped, when sued by the plaintiff for the recovery of the

premises on the ground of a breach of such condition, from denying that the title conveyed to them or to their grantors by the plaintiff, was, when so conveyed, a good title.

2. TITLE; *Condition Subsequent; When it Runs with the Land; Forfeiture.* Where a deed conveys land in fee, but, upon the express condition, that neither the grantee nor his heirs or assigns shall ever sell or permit to be sold any intoxicating liquors upon the premises conveyed, and that the land shall be forfeited back to the grantor whenever such condition shall be broken; *held,* that the estate conveyed is an estate upon condition subsequent, that the condition is valid, and until broken runs with the land, and is binding not only upon the grantee himself, but also upon his assigns, and that the land may be recovered back by the grantor from the grantee or from any assignee of his who may commit a breach of said condition.

### Error from Osage District Court.

EJECTMENT, brought by *Wetherell* as plaintiff, against *Bridget O'Brien*, and *Michael,* her husband, and one *O'Neil,* as defendants, to recover the possession of "Lot 24, and a four-foot strip off Lot No. 23, making 29 feet front in Block 14 in Wetherell's addition to the town of Osage City." *Wetherell* had formerly owned said property, and had sold and conveyed the same by deed to one Reber, upon certain terms and conditions in said deed expressed and set forth. This deed is copied in full in the opinion, *infra.* Reber sold and conveyed the land to a party who conveyed it to *O'Neil,* and *O'Neil* conveyed it to *Bridget O'Brien.* Plaintiff founded his action upon a breach of the condition expressed in his deed to Reber, claiming that such breach worked a forfeiture of the title and estate conditionally conveyed. The defendants, under a general denial, claimed, first, that *Wetherell* never had any title; and second, that the condition did not run with the land, and that they held the absolute title in fee simple. Second trial at the January Term 1874. Verdict and judgment for plaintiff, and defendants bring the case here on error. No briefs on file.

*S. M. Berry,* for plaintiffs in error.

*James Rogers,* for defendant in error.

40—14 KAS.

O'Brien v. Wetherell.

The opinion of the court was delivered by

VALENTINE, J.: This was an action of ejectment brought by Wetherell against Bridget O'Brien, Michael O'Brien, and Michael O'Neil, to eject the defendants from a certain lot or parcel of land in Wetherell's addition to the town of Osage City. The theory upon which the plaintiff expects to recover is, as we would infer from the record and briefs of counsel, as follows: The plaintiff at one time owned the property in dispute. He transferred the property by deed to one Theodore L. Reber, upon the expressed condition that no intoxicating liquors should ever be sold on the premises, and that if Reber, his heirs or assigns, should ever violate this condition the property should be forfeited back to the plaintiff. The defendants hold their entire title and possession (there being two intermediate conveyances however,) solely under Reber. The defendants kept a liquor saloon on said premises, and sold intoxicating liquors thereon. The defendants expect to defeat the plaintiff's action upon the following grounds, to-wit: First, Wetherell never owned the property in dispute; second, the language used in the deed from Wetherell to Reber, which the plaintiff supposes created an estate merely upon condition, did in fact create an estate absolute, with merely a personal covenant on the part of Reber, not running with the land, that no intoxicating liquors should be sold on the premises; and therefore, as it is not claimed that Reber himself ever violated said covenant, no action of any kind has ever accrued against either Reber, or these defendants, or any one else; fourth, these defendants do not derive their title or possession from Reber.

The findings of the jury were general, and both the findings of the jury and the judgment of the district court were in favor of the plaintiff and against the de-

General findings, or verdict; presumption.

fendants; and hence we must assume that upon the evidence introduced all the material facts in the case were rightfully found against the defendants, and in favor of the plaintiff, unless there was substantially an entire

lack of evidence on some material fact necessary to be proved
by the plaintiff in order to enable him to recover. This
proposition follows as a necessary result from the numerous
decisions upon similar questions promulgated by this court.

The record in this case apparently shows, that the title to
the property in controversy originally passed from the United
States to John McManus; from John McManus
to Seyfert, McManus & Co.; from Seyfert,
McManus & Co. to John M. Wetherell; from
Wetherell to Theodore L. Reber; from Reber to John Brink-
ley; from Brinkley to Michael O'Neil, and from O'Neil to
Bridget O'Brien; and that Bridget O'Brien and Michael
O'Brien are husband and wife, now in possession of the
property, claiming it as their own, and selling intoxicating
liquors thereon. The defendants expect to defeat the action
of the plaintiff on the ground that the deed from Seyfert,
McManus & Co. to Wetherell shows upon its face that Sey-
fert, McManus & Co. had no power to buy, sell, or hold real
estate in Kansas. That portion of the deed which the de-
fendants rely on as showing said fact, reads as follows:

"This deed made the 15th day of January 1869 between
the corporation of Seyfert, McManus & Co., of the city of
Reading, county of Berks and state of Pennsylvania, of the
first part, and John M. Wetherell, of the city of Philadel-
phia and state of Pennsylvania, of the second part, witnesseth:
Whereas, by an act of the general assembly of the common-
wealth of Pennsylvania, approved the 7th of April 1862,
the parties doing business at the Reading Iron-Works in the
county of Berks aforesaid were created a body corporate un-
der the name, style and title of 'Seyfert, McManus & Co.;'
and whereas by a supplement to said act, approved the 28th
of February 1865, it is provided that in addition to the
powers now possessed by Seyfert, McManus & Co., the said
corporation shall be capable of purchasing, holding, leasing
and improving lands in any of the states or territories of the
United States other than Pennsylvania, and to obtain there-
from any and all minerals, and other valuable substances,
whether by working or mining, leasing or disposing of priv-
ileges to work or mine such lands, or any part thereof, and to
erect houses or other buildings, machinery, or works thereon,

*Foreign corpo-
rations. Power
to purchase
lands in Kansas.*

and to use, lease or work the same, and to dispose of all such lands, mines, works, and the products thereof, by lease, mortgage or sale, in such manner as they may deem proper; and whereas, the said corporation of Seyfert, McManus & Co. are the owners in fee simple of certain lands in the state of Kansas under letters-patent granted by the United States of America, to-wit," etc.

This deed was executed on the part of Seyfert, McManus & Co. by John McManus, president of the company, and John Schroeder, secretary. Now if this John McManus is the same John McManus who purchased the property from the government, we suppose the title to the property passed from John McManus to John M. Wetherell, whether it passed intermediately through Seyfert, McManus & Co., or directly from John McManus by virtue of the deed he executed for Seyfert, McManus & Co. to Wetherell. But said deed really shows that Seyfert, McManus & Co. were a corporation actually "doing business at the Reading Iron-Works in the county of Berks," in the state of Pennsylvania, and tends more strongly to show that such corporation had power to buy, hold, and if necessary sell real estate in Kansas than otherwise. That a corporation may be created in one state with power to buy, hold and sell real estate in another state, we suppose will not be questioned. (*Hunt v. K. & M. Bridge Co.*, 11 Kas., 434, 435; *State v. Boston &c. Co.*, 25 Vt., 433, 443; *Whitman Mining Co. v. Baker*, 3 Nevada, 386; *Lumbard v. Aldrich*, 8 N. H., 31; *Silver Lake Bank v. North*, 4 Johns. Ch., 370; Angell & Ames on Corporations, §§ 161, 162.) But it may be claimed that this particular corporation had no such power. Such power was certainly attempted to be given to said corporation in express terms. Then why did it not possess such power? Simply, as is claimed, because it could not exercise such power in Pennsylvania, the state where it was created. But it is not shown definitely what powers it could exercise in Pennsylvania. It is true, the amendment to its charter did not give it authority to exercise any such power in Pennsylvania, but its original charter may have done so. But even if its original charter did not give

it authority to exercise any such power in Pennsylvania, still that would not necessarily prevent it from exercising such power in another state, it being expressly authorized so to do. A corporation is not always and necessarily confined to the exercise of only such powers in other states which it could properly exercise in its own state. (*Land Grant Rly. Co. v. Coffey Co.*, 6 Kas., 254, and authorities above cited.) The Land Grant Railway and Trust Company mentioned in 6 Kas., 245, et seq., was no corporation. It had no home, no domicile, no place of doing business, no office, no legal existence anywhere; and hence, whatever may be anywhere said of that supposed corporation may not have any application whatever to the corporation of Seyfert, McManus & Co.

But suppose said corporation transcended its powers when it purchased, held, and sold real estate in Kansas: has any person or authority, except the state, any right to complain, or even to question the validity of the transaction? (*Genndie v. Northampton Water Co.*, 7 Penn. St., 233.) But above all others, have the defendants any right to complain or to question the validity of said transaction? They hold their entire title to the property and the possession thereof from and under the plaintiff. They have not the least shadow of title, except such as they have derived from the plaintiff. This is evidently true from the evidence in the case, whether Reber ever conveyed his title to the property by deed to Brinkley or not. The deeds from Brinkley to O'Neil, and from O'Neil to Mrs. O'Brien, show it; (see Washb. on Real Prop., Book 3, ch. 2, § 6, paragraphs 24 and 26, and cases there cited;) and other evidence tends to show it; and there is not a particle of evidence that tends to show the contrary. And therefore, assuming that the deed from the plaintiff to Reber is in terms just such a deed as the plaintiff claims that it is, we think that the defendants are estopped from denying the plaintiff's title. That is — where the defendants hold their entire title and possession to certain land from and under the plaintiff, and hold the same under the express con-

*Who can question powers of corporation.*

*1. When grantee is estopped from denying that his grantor had title.*

dition that no intoxicating liquors shall ever be sold upon the premises, and are to forfeit the premises back to the plaintiff whenever such condition shall be broken, the defendants are estopped, when sued by the plaintiff for the recovery of the premises on the ground of such forfeiture, from denying that the title conveyed to them or to their grantors by the plaintiff, was, when so conveyed, a good title. Upon this principle alone the question now under consideration may be decided against the defendants. While a grantee, or one claiming under him, may in many cases dispute the title attempted to be conveyed by the grantor, yet the principle contained in the proposition just enunciated, we think, has never been questioned; and many authorities go much further in asserting that the grantee, or one in privity with him, cannot dispute the grantor's title: Bigelow on Estoppel, 414; *Williams v. Cash,* 27 Georgia, 507, 512; *Woolfolk v. Ashley,* 2 Metc., (Ky.) 288; *Fitch v. Baldwin,* 17 Johns., 161; *Jackson v. Hotchkiss,* 7 Cowen, 401; *Root v. Crock,* 7 Penn. St., 378; *Wedge v. Moore,* 6 Cush., 8; *Hodges v. Eddy,* 38 Vt., 328, 348, 349; *Ward v. McIntosh,* 12 Ohio St., 231. We might here say, that the deeds from Brinkley to O'Neil, and from O'Neil to Mrs. O'Brien, conveyed the premises "with all the restrictions and reservations in regard to the sale of intoxicating liquors contained in the original deed from John M. Wetherell and wife to Theodore L. Reber and wife." This quotation is copied from the last-mentioned deed; and the deed from Brinkley to O'Neil contains a clause of the same purport, and couched in nearly the exact language. We might also say, before passing to the next question, that in this state the party in ejectment having the better title may always recover, whatever that title may be, legal or equitable. It is true, a plaintiff must recover upon the strength of his own title; but if his title is better than that of his adversary, he may recover, however weak his title may be. A mere prior possession, with claim of ownership, would probably be sufficient to enable the plaintiff to recover as against a party who had no right to the premises. Now

apply this doctrine to the present case. Wetherell, the plaintiff, once had possession, with a claim of ownership. The defendants either hold under him, or else have no right to the premises at all. They have violated the conditions upon which Wetherell parted with the possession of the premises. Now should they be allowed to question his original ownership of the property?

The next question is, whether the deed from the plaintiff to Reber created merely an estate upon condition, or created an absolute estate with merely a personal covenant on the part of Reber not running with the land that no intoxicating liquors should ever be sold on the premises. The deed reads as follows:

2. Title; condition subsequent; breach; forfeiture.

"THIS INDENTURE, made this seventh day of August in the year of our Lord one thousand eight hundred and seventy, by and between John M. Wetherell and Mary S., his wife, of the city of Philadelphia, in the state of Pennsylvania, parties of the first part, and Theodore L. Reber, of the county of Osage, in the state of Kansas, party of the second part, witnesseth: That the said parties of the first part, for and in consideration of the sum of twenty dollars to said first parties in hand paid by said second party, the receipt whereof is hereby acknowledged, and for the further consideration that the said second party, and his heirs and assigns forever, shall and will well and faithfully observe, keep and perform the following conditions and covenant, to-wit, and it is expressly agreed and covenanted, that the said party of the second part, his heirs and assigns forever, shall never bargain, sell, barter, trade, or exchange any whisky, brandy, wines, or other intoxicating liquors, (beer excepted,) at or upon the premises hereinafter described and hereby conveyed, or any part thereof, or in any house or building that may be erected thereon, nor shall said second party, or his heirs and assigns, ever at any time suffer, allow, or permit any other person or persons so to do — doth by these presents grant, bargain, sell, remise, release, alien, convey and confirm unto the said party of the second part, and to his heirs and assigns forever, all the following described tracts, pieces and parcels of land lying and being situate in Wetherell's Addition to the town of Osage City, in the county of Osage, in the state of Kansas, to-wit, Lots numbered 23 and 24 in block numbered 14, and

lot number 31 in block numbered 13, together with all and singular the hereditaments and appurtenances thereto belonging, or in anywise appertaining: To have and to hold the same, and every part thereof, unto the said party of the second part, and his heirs and assigns forever—subject however, and upon the express condition, that the said party of the second part, and his heirs and assigns forever, shall and will well and faithfully perform the covenants and conditions hereinbefore named. And the said John M. Wetherell, and Mary S., his wife, for themselves and their heirs, executors, administrators and assigns, do hereby covenant and agree to and with the said party of the second part, and his heirs and assigns, that the said parties of the first part and their successors will warrant and forever defend the said lands and appurtenances, and every part thereof, unto the said second party, and to his heirs and assigns forever, against the said parties of the first part, and their successors, and against all and every person or persons whomsoever, lawfully claiming or to claim the same, subject however, and upon the express condition, that said party of the second part and his heirs and assigns shall and will well and faithfully keep and perform the conditions, covenants and agreements hereinbefore named. And it is one of the conditions, and a part of the consideration for the sale and conveyance of the lands hereinbefore described forever, that if said second party, or his heirs or assigns, or any person or persons by or with the knowledge, consent, or permission of said second party, or his heirs or assigns, shall at any time fail, neglect, or refuse to faithfully and fully keep, perform and observe the conditions and covenants aforesaid, or any of them, such failure, neglect or refusal shall be taken and held to be a breach of the covenant and condition of this conveyance; and any such breach of any of the conditions, covenants and agreements aforesaid shall work a forfeiture of the lands hereinbefore described to the whole and every part thereof, together with all the appurtenances thereto belonging or in anywise appertaining, and the same, the whole, and every part thereof, shall immediately revert to and become the property of the said parties of the first part, and their successors and assigns forever, as fully and completely as if this conveyance had never been made.

"In testimony whereof the said John M. Wetherell and Mary S. his wife, by John F. Dodds their attorney-in-fact, have caused this conveyance to be made, and set their hands

and seals to the same in the said county of Osage on the seventh day of August, 1870.

JOHN M. WETHERELL.    [Seal.]

MARY S. WETHERELL.    [Seal.]

*By John F. Dodds, their Attorney-in-Fact."* [Seal.]

The foregoing deed seems plain to us beyond all question. There can be no doubt as to what was intended by the parties thereto. And while the language thereof clearly shows that it was intended by the parties that Reber should be bound by a personal covenant never to sell or permit to be sold any intoxicating liquors on the premises, yet it still more clearly shows that it was further intended by the parties that the estate in the premises should be conveyed merely upon the condition that neither Reber nor any one holding under him should ever do any act prohibited by said covenant. The deed expressly says that the conveyance is upon condition. The condition is expressly made to reach, not only Reber, but his heirs and assigns. The deed expressly says that if this condition shall ever be broken by the grantee, or his heirs or assigns, the premises shall be forfeited back to the grantor, his heirs or assigns. And of this condition the defendants had ample notice, as the recitals in their own deeds most clearly show. The estate conveyed was clearly an estate upon condition subsequent, and the condition, until broken, runs with the land, beyond all doubt. We do not in this case intend to decide whether a covenant, personal or otherwise, could be created on the part of Reber, the grantee, by a deed which he never signed; (Washb. on Real Property, Book 3, ch. 4, § 2, paragraphs 48, 49;) nor do we intend to decide whether the assigns of Wetherell, the grantor, could take any advantage of the breach of any condition contained in such a deed, (Washb. on Real Property, Book 1, ch. 14, par. 14,) for these questions are not in this case. What we do decide is, that by the language contained in the said deed from Wetherell to Reber a valid condition subsequent was created, upon the continued observance of which by the grantee, and his heirs and assigns, the estate conveyed to

them depended; and that whenever either of them committed a breach of said condition the grantor was at liberty to claim a forfeiture of the estate from them to himself. And as ample authority for this decision, we would refer to the case of *Plumb v. Tubbs,* 41 N. Y., 442. The case of *Harsha v. Reid,* 45 N. Y., 417, relied on by the plaintiffs in error, has no application whatever to the case now under consideration. That was a case where a person already the owner of a certain piece of land covenanted with another person for a money consideration that he would not erect a grist-mill on the land. And the covenant in that case had no connection with the sale or conveyance of that land, or of any other land, upon condition or otherwise. In the language of the court deciding the case, "The covenantees did not derive title from the covenantors, but the covenant was an independent and personal contract made upon and for a money consideration *in no way connected with the title.*"

These are the only questions necessary to be considered in detail. Bridget O'Brien was the principal defendant in the case, and the question asked her by the plaintiff on the trial was undoubtedly for the purpose of showing that her husband sold the liquors which he did sell with her knowledge and consent; and the question was therefore competent under the language of the deed. The admission of the testimony of the witness Curtis was not sufficiently erroneous and material, if erroneous at all, so as to require a reversal of the judgment of the court below. The sale of the liquors in this case, as in most cases, had to be proved principally by circumstantial evidence; and therefore the plaintiff proved the following circumstances by Curtis, to-wit, that the word "Saloon" was over the awning of the building where it is claimed the liquors were sold, and that the witness frequently saw persons go into the building apparently sober and come out drunk, and that this led him to believe that intoxicating liquors were sold there. If this evidence were wholly thrown out, there would still be ample evidence to sustain the verdict of the jury.

The judgment of the court below is affirmed.

All the Justices concurring.