No. 19,199.

MARY OLIVE HOWE, *Appellant*, v. HENRY H. HOWE, et al., *Appellees*.

SYLLABUS BY THE COURT.

DEED—*Interpretation — Limitation to "Blood Heirs" Void — Estate in Fee Simple Created*. In the premises of a deed the grantor was described as "of the first part." Five persons, who were his children, were named as "of the second part." The granting clause granted the land to "the parties of the second part, their blood heirs and assigns." The habendum was "forever." The covenant of seizin was with "said parties of the second part." The warranty was to "said parties of the second part, their heirs and assigns." A life estate was reserved to the grantor by a separate clause. *Held*: (1) The intention of the grantor is to be gathered from the four corners of the instrument. (2) The grantor intended to make a present grant of the land to the five persons named as parties of the second part, reserving to himself a life estate. The grantees were to have power to convey, but if no conveyance were made the land was to descend to their blood heirs only. (3) The words "blood heirs" were words of limitation and not words of purchase. The limitation was void, and the grantees took. estates in fee simple and not estates for life.

Appeal from Sumner district court; CARROLL L. SWARTS, judge. Opinion filed January 9, 1915. Reversed.

*F. L. Martin* and *Van M. Martin*, both of Hutchinson, for the appellant.

*J. S. Dey*, of Wellington, for the appellees.

The opinion of the court was delivered by

BURCH, J.: The action in the district court was one to quiet title. The facts were that Fanny K. Howe, owner of the land in controversy, died intestate, leaving as her heirs at law her husband, Henry H. Howe, and five children, one of whom was Ira E. Howe. To

effect partition the children deeded to Henry H. Howe, who then executed and delivered to the children a deed containing the following provisions:

"This Indenture, made this 19th day of October, A. D., 1900, between Henry H. Howe a single man of Sumner county, in the state of Kansas, of the first part, and Eva C. Regan, Emma A. Allen, Eugene E. Howe, Ira E. Howe, and J. Earl Howe in the State of Kansas and territory of Oklahoma, of the second part.

"Witnesseth, that said party of the first part, in consideration of the sum of One Thousand Dollars, the receipt whereof is hereby acknowledged, do by these presents Grant, Bargain, Sell and Convey, unto said parties of the second part, their blood heirs and assigns, all the following described real estate. . . . The grantor herein expressly reserves to himself a life estate to the rents, use and occupancy of said real estate.

"To Have and to Hold the Same, together with all and singular the tenements, hereditaments and appurtenances thereunto belonging or in anywise appertaining forever.

"And said grantor . . . does hereby covenant, . . . to and with said parties of the second part, that at the delivery of these presents, he is lawfully seized in his own right, of an absolute and indefeasible estate of inheritance, in fee simple. . . . And that he will warrant and forever defend the same unto said parties of the second part, their heirs and assigns."

Ira E. Howe died leaving a will in which he devised the land to his wife, Mary Olive Howe. The blood heirs of Ira E. Howe asserted title to the land, and Mary Olive Howe brought the action to free her estate from their claims and to remove the cloud cast upon her title by the word "blood" prefixed to the word "heirs" in the granting clause of the Henry H. Howe deed. The court held that Ira E. Howe took a life estate only under the deed and rendered judgment for the defendants. The plaintiff appeals.

The statute reads as follows:

"The term 'heirs,' or other words of inheritance, shall not be necessary to create or convey an estate in fee

simple; and every conveyance of real estate shall pass all the estate of the grantor therein, unless the intent to pass a less estate shall expressly appear or be necessarily implied in the terms of the grant." (Gen. Stat. 1909, § 1651.)

The intention of the grantor in the deed in question is to be gathered from the four corners of the instrument. So considered, the deed makes it clear that the grantor intended to make a present grant of the land to the five persons named as parties of the second part, reserving to himself a life estate. The grantees were to have power to convey but if no conveyance were made the land was to descend to their blood heirs only.

An estate tail was not created because words of procreation were not inserted in the deed. (2 Blackstone's Commentaries, p. 114.)

The word "blood" has a broad signification:

"BLOOD. Kindred; consanguinity; family relationship; relation by descent from a common ancestor. One person is 'of the blood' of another when they are related by lineal descent or collateral kinship." (Black's Law Dictionary, title, blood.)

The very indefiniteness and generality of the term is such that the grantor could not have intended it to designate and describe certain persons who were to take as present purchasers under the deed. It merely designated a class of heirs who were to take by inheritance from the named grantees, and consequently was a word of limitation only. Ira E. Howe bore within himself during his lifetime all his heirs of every class. When he became seized, the inheritance limited to his blood heirs vested in him and he took a fee simple and not a life estate. While the grantor could create estates in the land he could not abrogate the statute of descents and distributions.

"In creating an estate of inheritance, other than an estate tail, the inheritance cannot be restricted to a particular class of heirs. Thus an estate to one and his 'heirs male,' or 'heirs female,' would be re-

garded as a fee simple, the limitation to the particular class of heirs being regarded as surplusage." (1 Washburn on Real Property, 6th ed., § 163.)

William G. Hammond, Dean of the St. Louis law school and lecturer on the history of the law at several American universities, appended to his edition of Blackstone the following illuminating note bearing upon this subject:

"Although the owner in fee-simple has an absolute power of controlling his property, and can do what he pleases with it, generally speaking, there is one very important limitation upon this power.

"He cannot change the state's law of descent, *e. g.*, he cannot make it descend to sons only. All he can do is to give it, or rather to give particular estates in it to specified individuals during a limited period. He can give it to whom he pleases for life, or for years, with a remainder over to the grantee's oldest son, or to any other individual, whether existing or not, if properly specified and limited.

"In this case, of course, no person can change the disposition made of it, until the last remainderman entitled to take, comes into being and into possession of the estate.

"Formerly many attempts were made by ingenious limitations to keep the property in this condition for many generations. . . . It is evident that this would change the law of the state so far as this particular property was concerned, by substituting for a fee-simple an endless succession of life estates." (2 Hammond's Blackstone's Commentaries, p. 203.)

The judgment of the district court is reversed and the cause is remanded with direction to quiet the plaintiff's title.