No. 19,043.

LEVI NICHOLSON et al., *Appellees*, v. HULDAH J. NICH-
OLSON et al. (HULDAH J. NICHOLSON, *Appellant*).

SYLLABUS BY THE' COURT.

1. MONEY PAID BY MISTAKE—*Action Barred by Statute of
   Limitations.*  Where money was paid in 1898 under a mis-
   take and that mistake was discovered in December, 1903, an
   action for its recovery filed in August, 1907, was barred by
   the statute of limitations.

2. TRUST FUNDS—*Action to Recover Barred by Statute of Lim-
   itations.*  Where the proceeds of an estate of an Ohio woman
   who died in 1860, have been permitted by the heirs to re-
   main unadministered in their mother's hands for thirty-
   eight years, and the only full' brother of the deceased woman
   persuaded the mother that he was entitled to the entire estate
   and received from his mother the sum of $1200 thereon in
   1898, and the mother and his half brother and sisters de-
   manded a return thereof in 1903, on the theory that the
   money was trust funds in the mother's hands, and that trust
   was denied by the brother who received the money, a suit to
   impress the money in his hands as a trust, filed as an
   amended petition in 1911 to an action originally begun in
   1907 to recover the money as paid by mistake, when the
   trust had been disavowed in 1903 and all interested parties
   had notice thereof, such suit was barred by the statute of
   limitations.

3. TRUST FUND—*Accounting—Action Barred by Statute of Lim-
   itations.*  Where a new petition filed on July 26, 1911, re-
   cites that money was paid by mistake or fraud in 1898,
   and that an action to recover it had been begun in August,
   1907, and the original petition had been amended to plead
   a trust character of the money so paid, and that such ac-
   tion or suit was dismissed on July 26, 1911, and such new
   petition filed that day sets up the earlier steps in the liti-
   gation and seeks to have the money so paid impressed with
   a trust and to have an accounting thereof, *held*, that when
   it is shown by the pleadings and the evidence that the re-
   cipient never acknowledged the trust character of the money,
   denied its trust character, and refused its return in 1903
   on the demand of the interested parties, a demurrer to the
   evidence should have been sustained.

Appeal from Miami district court; JABEZ O. RANKIN, judge. Opinion filed February 6, 1915. Reversed.

*Frank M. Sheridan,* and *Bernard L. Sheridan,* both of Paola, for the appellant.

*C. S. Ritter,* of Iola, *E. J. Sheldon,* and *S. J. Shively,* both of Paola, for the appellees.

The opinion of the court was delivered by

DAWSON, J.: Thomas Nicholson, a resident of Ohio, died in 1857. ·He had been twice married. By his first marriage he had two children, William J. and Mary. By his second wife, Margaret Nicholson, he had several children, Levi, Eliza and Katherine and others. Shortly before his death, Thomas and his wife Margaret conveyed to the eldest son, William J., a tract of land in Ohio as an advancement and as his full share in the estate of his father. This· was accepted by William J.

Mary, the eldest daughter of Thomas, died in 1860, and while her stepmother Margaret was subjected to some litigation on account of some bargain over Mary's interest in her father's estate, it seems to be agreed that at her death Mary still held an interest in her father's estate; and that interest, as her estate, descended by the laws of Ohio to her brothers and sisters. Mary's estate was never segregated from her father's and was never administered. It remained with the estate of Thomas, her father, in the possession and control of Margaret, her stepmother and the widow of Thomas.

William entered the army, and after the civil war settled in Miami county, Kansas, in 1865. Thither also came Margaret and her children in 1867, having sold the Ohio lands comprising the estate of Thomas and incidentally the lands of Mary's estate, and settled on a farm near Spring Hill. Before leaving Ohio the estate of Thomas was closed and the administrator discharged, and a settlement was had with Levi and Eliza

who had attained their majority. The proceeds of the balance of the property of the estate of Thomas, being the share of Margaret his widow and her other children, and including the forgotten or unconsidered estate of the deceased sister Mary, were used in the purchase of the Spring Hill farm by Margaret. As her other children attained their majority Margaret settled with them for their interest in their father's estate. The record does not show when the youngest child became of age, but since the father died in 1857 the posthumus son, and therefore necessarily the youngest, must have attained his majority by 1877 or 1878.

Twenty years later, in August, 1898, William J. Nicholson called on his stepmother and told her that by the laws of Ohio he was entitled to the entire estate of the deceased Mary, she being his full sister; and the old lady gave William her promissory notes for $1200 and later paid him that sum in cash out of her personal estate in consideration of this claim. Final payment on these notes was made on March 5, 1900.

Until this claim of William in 1898, during the entire thirty-eight years since the death of Mary, no claim had been made by any of the heirs for any part of Mary's estate and Margaret had used it as her own.

In 1903 Katherine, the half-sister of William, informed William that this transaction was not satisfactory, and later, in December, 1903, Levi and Katherine called on William on behalf of their mother, and with her knowledge and approval, and demanded a return of the $1200.

William's claim to his sister Mary's entire estate was not well founded, and by the laws of Ohio, brothers and sisters of the half-blood share equally with those of the whole blood. It also appears that there had been a conference among the children of Margaret concerning the payment of this $1200 to William, and that they all agreed, as well as their mother, that the demand for its repayment should be made by Levi and Katherine. Payment was refused.

On August 30, 1907, suit was brought by Margaret against William for the recovery of the $1200. This record shows that in December, 1903, Margaret had knowledge of the mistake of fact under which she had paid this money. From December, 1903, until August 30, 1907, is three years and eight months; and viewing the conduct of William in the worst possible light, an action for relief on the ground of fraud was barred by the statute of limitations. (Civ. Code, § 17, subdiv. 3.) We are not unmindful of the pleading which recites that Margaret did not know of the mistake of fact until 1907. That pleading is not true, and her own testimony and all the evidence is to the effect that she knew it in 1903 at the time she gave her sanction to the demand of Levi and Katherine upon William for the return of the money. (*Donaldson v. Jacobitz,* 67 Kan. 244, 72 Pac. 846, and cases there cited.)

Margaret Nicholson died on March 19, 1910, but in the meantime some phase of this controversy had been appealed to the supreme court, and a decision as between the original litigants thereon was handed down on July 9, 1910. (*Nicholson v. Nicholson,* 83 Kan. 223, 109 Pac. 1086.)

On October 3, 1910, the district court sustained a motion to revive the action in the name of Levi, Katherine, and the other heirs—not in the name of Margaret's personal representative, the administrator. (Civ. Code, § 437.)

"The revivor was properly in the name of the administrator alone." (*Halsey v. Van Vliet,* 27 Kan. 474, syl. ¶ 3.)

"A personal representative. This of course means an executor or administrator." (*O'Neill v. Douthitt,* 40 Kan. 689, 694, 20 Pac. 493.)

This record shows that Margaret's estate was then in the hands of an administratrix, and she was the personal representative in whose name this revivor should have been made.

On June 15, 1911, a supplemental petition was filed

in behalf of the heirs, suggesting that Margaret had held the estate of Mary as trustee, and that William J. Nicholson, the defendant, had obtained the possession of the same as trust funds of Mary's estate in 1898, and seeking to have the $1200 decreed to be a trust in William's hands, for their benefit. This would seem to be a departure from the issues of the original action. But laying that point aside, we fail to see why this cause of action was not barred by the statute of limitations. The record is not clear whether it was filed April 29, June 15, or June 16, 1911, but at best it was full twelve years after the action of William in demanding and receiving the money from his stepmother, and at least over seven years since Margaret, Levi, Katherine and the others had demanded its return. William's conduct in seeking and obtaining the money in 1898 and his refusal to return it in 1903, with the full knowledge of all the interested parties from the latter date, was such a denial of the trust character of the money that they should have brought their action setting up the trust and his repudiation of it within the statute of limitations. This the heirs did not do. (*Kahm v. Klaus*, 64 Kan. 24, 67 Pac. 542; *Cooley v. Gilliam*, 80 Kan. 278, 102 Pac. 1091.)

On July 26, 1911, at the conclusion of plaintiffs' evidence, defendant interposed a demurrer to the evidence, and the plaintiffs asked and obtained leave to dismiss their action without prejudice, and the cause was dismissed.

On the same day, July 26, 1911, a new action was filed in the names of the heirs and Mrs. S. C. Fairchild (Katherine), as administratrix, against William J. Nicholson, which set up with much detail all the foregoing pertinent facts, and emphasizing the point that Margaret did not learn what was the Ohio law of descents and distributions until January, 1907, and alleged a confidential relationship between Margaret and William as stepmother and stepson, mentioning her advanced age of eighty-four years, and praying that

William be required to account to the administratrix and the heirs for the $1200 and interest at six per cent since 1898.

William, the defendant, died on November 19, 1911, and the plaintiffs obtained a revivor against his widow and children. No administrator of William had been appointed in this state, he having removed to California some time before his death. Whether that was proper need not be decided.

In the brief of counsel for appellees this apparently complex proposition is reduced to very simple terms:

"There is but one cause of action stated in the petition, viz: The recovery of a certain fund, the proceeds of the sale of a certain share of the real estate owned by Thos. Nicholson in Noble County, Ohio, at the date of his death in 1857; that share being the part that his daughter Mary inherited as one of his heirs. The recovery was sought by the plaintiff, Margaret Nicholson, who had been in possession of it and who had paid it to the defendant W. J. Nicholson; both those persons died during the time the action was pending in the trial court and revivor had been had in the names of the brother and sisters of Mary as plaintiffs and against the children and widow of the defendant. It is elementary that the beneficiaries of a trust may join in a suit to recover the fund."

The case was tried to a jury. The court propounded thirteen special questions on its own behalf, thirty special questions asked by appellant and twenty-nine special questions asked by appellees. Afterwards the court set these findings aside so far as they conflicted with some twenty-two new findings of its own, and gave judgment on the evidence against Huldah J. Nicholson, the widow of William J. Under the pleadings and the evidence, this result can not stand.

Viewed from the three main angles at which at one time and another this action has been threshed out— as an action for the recovery of money paid by mistake; as a suit to declare a trust; and as an action for an accounting and reciting the earlier steps in the litigation wherein it was sought to recover this $1200 as

Telephone Co. v. Telephone Association.

money paid by mistake and later as a trust fund; or the still simpler case stated by appellees as above quoted, the bar of the statute of limitations had fallen, and to our minds that statute was enacted to prevent just such a case as this; and the court orders that it be reversed and remanded with instructions to sustain the demurrer to plaintiffs' evidence filed on behalf of Huldah J. Nicholson.