### No. 27,625.

CHARLES WEED WRIGHT, *Appellant,* v. JAMES S. JENKS, MELISSA DENNISON, MARY WELLINGFORD, EMMA HATCH, MARTHA WILCOX, CHARLES JENKS, HENRY MILLER, JAMES WATT, and the Unknown Heirs, Executors, Administrators, Devisees, Trustees and Assigns of Any of the Said Defendants that may be now Deceased, *Appellees.*

(261 Pac. 840.)

#### SYLLABUS BY THE COURT.

1. WILLS—*Construction—Estates Tail—Effect of Quitclaim Deed While Property in Possession of Life Tenant.* Where a testator devised a life estate in land to her husband, and devised the remainder in favor of her son and daughter "and to their children of their bodies after them," such remainder constituted an estate tail in each of testator's children; and a quitclaim conveyance by the son (while the property was in the exclusive possession of the life tenant) vested in the grantee and his successors in title the interest devised to the son by his mother's will.

2. ESTATES—*Estates Tail—Severance of Entailment.* The devisee of an entailed remainder estate, although out of possession and although the life tenant in possession does not join therein, may sever the entailment by a conveyance.

Appeal and Error, 4 C. J. pp. 1149 n. 97, 1157 n. 96. Deeds, 18 C. J. pp. 361 n. 77, 443 n. 11. Estates, 21 C. J. pp. 931 n. 91, 934 n. 50. Judgments, 34 C. J. p. 240 n. 27. Trial, 38 Cyc. p. 1566 n. 86. Wills, 40 Cyc. p. 1596 n. 86; 28 R. C. L. 251.

3. Wills—*Restraint on Alienation of Estates—Necessity of Effective Barrier to Enforce It.* An attempted restriction upon the alienation of property is ineffective where no person but the alienor is concerned and where the grantor or testator who sought to impose the restriction prescribed no effective barrier to enforce it, such as an active trusteeship, provision for reëntry, alternative grant or devise over for breach thereof.

4. Trial—*Instructed Verdict—When Proper.* Where the evidence developed no controverted issue of fact, and plaintiff's evidence was altogether insufficient to support his cause of action, an instructed verdict in favor of defendants is proper.

5. Judgments — *Modification and Correction.* Where a plaintiff claims the entire title to a tract of real estate, basing his title to one undivided half interest by virtue of a will and to the other half interest by virtue of his succession from a deceased sister, and defendants prevail as to the one-half interest claimed by plaintiff under the will, but plaintiff's title to the other half interest is neither disputed nor disputable by any party to the action, an unqualified judgment in favor of defendants and "that plaintiff take nothing" should be modified so as to define precisely the rights of plaintiff as well as those of the defendants.

Appeal from Ellsworth district court; Dallas Grover, judge. Opinion filed December 10, 1927. Modified.

*David Ritchie,* of Salina, and *Ira E. Lloyd,* of Ellsworth, for the appellant.

*Samuel E. Bartlett* and *George D. Miner,* both of Ellsworth, for the appellees; *Morrison Shafroth* and *Will Shafroth,* both of Denver, Colo., of counsel.

The opinion of the court was delivered by

Dawson, J.: This was an action in ejectment to recover possession of 800 acres of Ellsworth county land known as the Happy Valley ranch. Plaintiff claimed a half interest in the ranch by virtue of his mother's will and the other half interest as successor in title to his deceased sister.

The defendants claimed an undivided half interest in the ranch under James S. Jenks, to whom plaintiff had made a quitclaim deed of the interest devised to him by his mother's will. The pertinent paragraph of the will reads:

"Item 1st. I [Emma J. C. Wright] do hereby devise, will and bequeath to my husband, Geo. F. Wright, the farm known as 'The Happy Valley ranch' in Ellsworth county, Kansas, and all lands thereunto belonging for the term of his natural life without the power of disposing of the same. I also will him all the cattle on the ranch at the time of my death. In event of his death the property to revert equally to Chas. and Ina Wright, my children, during

their natural lives and to their children of their bodies after them, they not having the right to sell, encumber or dispose of the same; in event of either dying without heirs, the property to revert to the survivor of heirs."

Emma J. C. Wright, the testator and mother of plaintiff, died in Denver, Colo., in 1894. Her will was probated in Ohio and in Ellsworth county, Kansas. The life tenant designated by the will, George F. Wright, entered into possession of the ranch and enjoyed its rents and profits during his lifetime.

On May 19, 1900, the plaintiff, Charles W. Wright, and Mamie I. Wright, his then wife, executed and delivered to James S. Jenks of Arapahoe county, Colorado, a quitclaim of all their interest in the Happy Valley ranch, describing it in regular terms of government survey. The consideration named in the deed was one hundred dollars. The deed was recorded in Ellsworth county on May 21, 1900.

On December 19, 1911, George F. Wright, the life tenant, died in Florida. Thereupon James S. Jenks, as grantee under the plaintiff's quitclaim deed of 1900, and Ina Wright (Mrs. Paddock), under her mother's will, jointly entered into possession of the ranch through their tenant and mutually shared the rents and profits. Jenks died in 1920, and defendants are his successors in title and interest. Ina died in Ohio on March 14, 1926. It does not appear that she ever attempted to sell, encumber, or dispose of her interest in the ranch; and it is agreed that she died without having any children of her body or any issue whatsoever.

In February, 1912, a few weeks after the death of the life tenant, this plaintiff employed a lawyer to go to Colorado to attempt to obtain a surrender of the interest in the ranch held or claimed by Jenks by virtue of his quitclaim deed of 1900. This lawyer tendered Jenks $250 in gold for a relinquishment of his interest in the property. This offer was declined, and on February 19, 1912, this plaintiff brought suit in the district court of Ellsworth county to cancel the quitclaim deed he had executed and delivered to Jenks eleven years before. In that petition plaintiff alleged that at the time the quitclaim deed was executed he (plaintiff) was a drug addict and incompetent, that Jenks knew that fact, that plaintiff then had no money to pay for the drugs which he craved, that Jenks agreed to loan him a hundred dollars on the security of plaintiff's interest in the Happy Valley ranch, and pursuant thereto and on the supposition that the

instrument was a "lease" of his interest given to secure that loan he signed the quitclaim deed, and—

"Plaintiff at the time being nearly crazy for money to buy cocaine and drugs, and wholly incompetent to transact business, and wholly unaccountable for his acts, all of which said Jenks at the time well knew, together with his then wife signed the paper which said Jenks handed to him, supposing at the time that said paper was security only to secure the said debt to be incurred of $100, and did not read said paper, nor was he acquainted with the contents thereof, but signed same upon the command and direction of said defendant James S. Jenks . . . The said Jenks kept the said paper and handed to said plaintiff the sum of ten dollars, . . . and . . . at such different times handed to plaintiff different sums of money, but in all not more than ten dollars in addition to the ten dollars. . . . Said plaintiff avers that he learned long after he had signed the said paper that the same was a deed, which purported to convey unto the said Jenks all of said plaintiff's title and interest in and to said real estate above described. That the said defendant Jenks, knowingly, wrongfully and fraudulently, pretended that plaintiff was signing a paper as security only for $100."

Nothing came of that lawsuit, and October 8, 1912, it was dismissed. This action was begun on April 30, 1926. The pleadings were somewhat lengthy, but neither they nor the evidence developed any sharply controverted issue of fact. At the conclusion of the evidence adduced by the parties, defendants' motion for an instructed verdict was sustained and judgment was entered in their behalf.

Plaintiff appeals, and presents a number of interesting legal questions suggested by the record:

He contends that when he executed the quitclaim conveyance to Jenks in 1900 his interest in the Happy Valley ranch was a contingent remainder which under a rule of the feudal law was not alienable to a stranger. But the philosophy of the feudal law had its basis and justification in the condition of society in medieval times. (*Miller v. Miller,* 91 Kan. 1, 5, 136 Pac. 953.) As such, it was a part of the common law of England, but being altogether unsuited to the conditions and needs of the people of this state it never became a feature of Kansas jurisprudence. In *Clark v. Allaman,* 71 Kan. 206, 80 Pac. 571, it was said:

"It will not be denied that in every state particular rules of the common law, as it existed in England prior to the fourth year of the reign of James I, are not consciously regarded as binding; many others are consciously rejected, and new rules, the product of American conditions, departing widely from the

English common law in fact, and quite indifferent to it in theory, became established and must be recognized as of controlling authority. Rules of law have their birth, growth and decay, like generations of men, and in order to meet the expanding needs of the inhabitants of the young commonwealth the legislature enacted the statute of 1868, continuing in force the common law only as modified by constitutional and statutory law, judicial decisions, and the condition and wants of the people." (p. 229.)

In *Markham v. Waterman*, 105 Kan. 93, 98, 181 Pac. 621, it was said:

"In this state the studied and consistent public policy has been to maintain as far as may be the natural simplicity of property rights, uncluttered with artificial refinements of the common law. (*Simpson v. Mundee and Brown*, 3 Kan. 172, 184, 185.) Whatever form or sort of property, or interest in property, a man owns in this state, may ordinarily be the subject of legitimate barter and sale."

It is argued, however, that if the devise in the mother's will be regarded as an entailment of the remainder estate in plaintiff and his sister, then plaintiff's quitclaim deed was ineffective to sever that entailment, because by another rule of the common law only a tenant in tail in possession, or in conjunction with the tenant in possession, could break the entailment by submitting to a fine and recovery. That, too, was an antiquated rule of the common law· which does not fit into modern Kansas jurisprudence. This court has frequently admitted that it has not been able to discover any valid objection to the placing of reasonable restrictions upon the alienation or devolution of property for limited periods; to make provision for the support of persons ill fitted to wage life's battles (*Abbott v. Perkins*, 90 Kan. 45, 132 Pac. 1177; *Davis v. Davis*, 121 Kan. 312, 246 Pac. 982); to furnish sustenance for an improvident son (*Sherman v. Havens*, 94 Kan. 654, 146 Pac. 1030); to prevent or hinder a testator's estate being dissipated by grandchildren for whom in his natural affection and solicitude he would provide a life-enduring competence (*Grossenbacher v. Spring*, 108 Kan. 397, 402, 195 Pac. 884). And this court has repeatedly conceded that there is no rule of law or public policy against the entailment of an estate to endure so long as the successive tenants in tail see fit to respect it, since they themselves may get rid of the entailment by a mere conveyance whenever their needs or circumstances may constrain them thereto. In *Davis v. Davis*, supra, it was said.

"A devise of land to a person for life, and providing that upon the death of such person 'the fee title shall vest and become the property of the children

born of the body' of such person constitutes an estate tail which the tenant in tail may transform into an estate in fee simple by a·conveyance." (Syl. ¶ 1.)

But this court is not disposed to resuscitate this obsolete subtlety of the common law, without point or purpose to serve in this age, and engraft it as a condition prerequisite to an effective conveyance of an estate tail. What modern rule of law or public policy would be served by requiring that George F. Wright, the life tenant, should join or assent to the making of plaintiff's quitclaim deed in 1900 in order to give it effect? None has been suggested, except that in bygone times when the feudal system was in vogue in England such was the rule. In *Kirkpatrick v. Kirkpatrick,* 112 Kan. 314, 211 Pac. 146, it was said:

"Estates are said to vest in possession, and to vest in interest. An estate vests in possession when there is an accrued, fixed and indefeasible right to present enjoyment. An estate vests in interest when there is a present, accrued, fixed and indefeasible right to enjoyment at a future time. . . . A remainder vests in interest when a person is in being and definitely ascertained who will, if he lives, and whose heirs, devisees, or grantees will, if he does not live, have an indefeasible right to enjoyment, on termination of the precedent estate." (pp. 315, 323.)

The court holds that by the will of plaintiff's mother an undivided one-half interest in the Happy Valley ranch vested in plaintiff subject to the life tenancy conferred by the same instrument on his stepfather, George F. Wright; and that plaintiff's interest was a legitimate subject of barter and sale on May 18, 1900, when he · executed the quitclaim deed to defendants' predecessor in title, James S. Jenks.

We have referred above to the power of a grantor or testator to place reasonable restriction for limited periods upon the right of his grantee or devisee to alienate the property granted or devised. But a mere admonitory gesture in a deed or will is insufficient to do so. (*Durand v. Higgins,* 67 Kan. 110, 72 Pac. 567; *Brady v. Fuller,* 78 Kan. 448, 96 Pac. 854; *Howe v. Howe,* 94 Kan. 67, 145 Pac. 873; 18 C. J. 361. See, also, *Bennett v. Chapin,* 77 Mich. 526; and *O'Connor v. Thetford,* [Tex. Civ. App.] 174 S. W. 680.) To make such restriction effective some practical bar to a breach of such restriction must appear, *e. g.,* by the intervention of trustees having active duties to discharge during the restrictive period; by provision for reëntry or alternative grant or devise over for breach of conditions prescribed in the instrument itself. (*O'Brien v. Weth-*

*erall*, 14 Kan. 616; *Abbott v. Perkins*, 90 Kan. 45, 48, 49, 132 Pac. 1177; *Grossenbacker v. Spring*, 108 Kan. 397, 402, 195 Pac. 884.) On this general subject see note to *Latimer v. Waddell*, 119 N. C. 370, in 3 L. R. A., n. s., 668-678.

Here the language of the mother's will, "they [plaintiff and his sister] not having the right to sell, encumber or dispose of the same," was altogether ineffective for two reasons—first, the testator created an estate tail in each of her children with the legal consequences attaching thereto; and second, the testator provided no effective bar or alternative consequence to enforce it.

Did the trial court err in sustaining defendants' motion for an instructed verdict? What was there for a jury to decide? The evidence disclosed no controverted issue of material fact. The execution, delivery, and recording of the quitclaim deed in 1900 were established. However incompetent plaintiff was by reason of his being addicted to drugs in 1900, he regained his competency, graduated from college in 1904, and commenced the practice of medicine, and he has followed that profession ever since. If we infer from the self-serving evidence of plaintiff's second wife that in his conversation with James S. Jenks in Denver in 1910 there was an admission by Jenks that the quitclaim deed of 1900 was a mortgage, but plaintiff could not prove it—"You cannot prove that it [the quitclaim deed] was left with me as security"—this statement was in effect a repudiation or breach of trust by Jenks which required plaintiff to bestir himself within statutory time to vindicate whatever right he claimed by virtue of any oral arrangement with Jenks. (R. S. 60-306, second clause; *Guild v. McDaniels*, 43 Kan. 548, 28 Pac. 607; *Burrows v. Johntz*, 57 Kan. 778, 48 Pac. 27; *Nicholson v. Nicholson*, 94 Kan. 153, 157, 146 Pac. 340.) If the quitclaim deed had been obtained by fraud during plaintiff's incompetency as a drug addict, relief should have been sought within two years after his disability terminated; and while the record does not show precisely when that happened, it must have been more than twenty years before this action was begun. If the two- and three-year clauses of the statute of limitations do not apply by reason of the absence of Jenks from Kansas, yet the rule as to laches is equally potent, and a twenty years' delay was an effective barrier to this action. (*Yeamans v. James*, 29 Kan. 373; *Reihl v. Likowski*, 33 Kan. 515, syl. ¶ 2, 6 Pac. 886, 5 L. R. A., n. s., 986; *Dunbar v. Green*, 66 Kan. 557, 72 Pac. 243; *Harris v. Defenbaugh*, 82 Kan. 765, 109 Pac. 681; *Dusenbery v. Bidwell*, 86 Kan.

666, 121 Pac. 1098; *Patterson v. Hewitt,* 195 U. S. 309, 49 L. Ed. 214.)

While this action was formulated as one in ejectment, it could not be tried as such until the quitclaim deed of 1900 had been gotten rid of with the aid of the trial court's equity powers. (*Reddy v. Graham,* 110 Kan. 753, 205 Pac. 362. See, also, *Foy v. Greenwade,* 111 Kan. 111, 206 Pac. 332.) It is a salutary rule of law which provides that evidence to prove a written instrument to be something other than it purports, must be "clear, consistent, unequivocal, satisfactory and convincing" (*Hoyt v. National Bank,* 115 Kan. 167, 175, 222 Pac. 127), and its pertinency as a defense to an attack on a twenty-six-year-old deed is obvious. The grantee was dead; the facts touching his purchase of plaintiff's remainder interest in the property could not be ascertained. To say the least, there was no evidence which measurably approached the requisite standard to impeach the deed under which defendants claimed title.

The foregoing disposes of so much of plaintiff's claim to the Happy Valley ranch as rests on the undivided one-half interest devised to him by his mother's will. But what about the other half interest claimed by plaintiff as successor in title to his deceased sister? Plaintiff put his whole title in issue in this lawsuit. Certainly a litigant does not lose his own by suing for more than his own. Yet this judgment reads:

"It is therefore by the court considered, ordered and adjudged that the plaintiff take nothing."

Such a judgment does not correctly define the rights of these litigants. The quitclaim deed did not pass to Jenks the plaintiff's after-acquired interest. Indeed that after-acquired interest did not pertain to the subject matter covered by the deed of 1900. As successor in title to his sister plaintiff has acquired something entirely different—the other undivided half interest in the Happy Valley ranch. We note in the pleadings and brief that defendants make no claim to more than an undivided half interest in the property. The judgment ought to be clarified accordingly. It should be decreed that defendants are the owners of an undivided one-half interest in the Happy Valley ranch, and that plaintiff is also the owner of an undivided half interest in the same property, and that he is entitled to the rights of a tenant in common with defendants in the possession and enjoyment thereof.

To that end the cause will be remanded to the district court to modify its judgment as outlined above, and when so modified it will be affirmed.