WILLIAM ERNST *et al.* v. JAMES M. FOSTER *et al.*

JAMES M. FOSTER *et al.* v. C. A. OUSLER *et al.*

Nos. 10014 and 10115.

1. CONSTRUCTION OF WILL—*not by words alone, but testator's surrounding circumstances considered.* A will is to be construed, not alone by its language, but by the condition of the testator's family and estate; and the judicial expositor should put himself as far as possible in the position of the testator, and take into consideration the circumstances surrounding him when the will was executed.

2. ———— *devise to widow " to use and dispose of during her natural life," gives power to dispose of fee.* After certain specific bequests, the will in question contained the following provision : "To my beloved wife, Ellen H. Foster, all the residue of my real and personal property, to have and to use and to dispose of during her natural life, and after her death to be divided equally among my three youngest heirs, namely: Almeda Elizabeth Foster, James Monroe Foster and Martha Jane Foster." *Held,* that the provision gave a life estate to the widow with the added power to dispose of the fee, and the property undisposed of by the widow would at her death descend to the three heirs.

3. ———— *to give effect to every part, if consistent with testator's general purpose apparent from entire will.* It is a general rule that a will should be construed so as to give effect to every part thereof, providing an effect can be given to it which appears to be consistent with the general purpose of the testator as gathered from the entire instrument.

Error from Lyon district court. Hon. W. A. Randolph, Judge. Opinion filed July 10, 1897. *Reversed.*

Error from Jackson district court. Hon. L. A. Myers, Judge. Opinion filed July 10, 1897. *Affirmed.*

In August, 1864, Aaron Foster, who was the owner of land situated in Jackson, Shawnee and Lyon Counties, died at his home in Jackson County. He left surviving him his widow, Ellen H. Foster, and the following-named children : Aaron Bluford Foster, Silas Jackson Foster, Newton Jasper Foster, Milton Smith Foster, Mary C. Ecton, Almeda Elizabeth Fos-

ter, James Monroe Foster and Martha Jane Foster; the last three named being minors. He had executed a will, which was as follows:

"In the name of God, Amen.

"I, Aaron Foster, of the County of Jackson and State of Kansas, being of sound mind and memory, and considering the uncertainty of this frail and transitory life, do, therefore, make, ordain and publish, and declare this to be, my last will and testament; that is to say: *First.* After all my lawful debts are paid and discharged, the residue of my estate, real and personal, I give, bequeath, and dispose of, as follows, to wit: To my sons, Aaron Bluford Foster, Silas Jackson Foster and Newton Jasper Foster, and my daughter, Mary C. Ecton, I give five dollars each. The reason why I do not will the above-named heirs more than five dollars each is, that they have had their full share of my property. To my son, Milton Smith Foster, the following-described quarter-section of land situated in Lyon County, Kansas, and known and described as follows, to wit: The southwest quarter of section 5, in township 18, of range 11. To my beloved wife, Ellen H. Foster, all the residue of my real and personal property, to have and to use and to dispose of during her natural life, and after her death to be divided equally among my three youngest heirs, namely: Almeda Elizabeth Foster, James Monroe Foster and Martha Jane Foster. In witness whereof, I have hereunto subscribed my name and affixed my seal the twenty-second day of June, 1864, in the year of our Lord one thousand eight hundred and sixty-four. AARON FOSTER."

[ SEAL.]

The will was duly probated, and the widow elected to take under its provisions. At the time of Aaron Foster's death, the three minor children were aged, respectively, fourteen, ten and six years. The eldest of these, Almeda Elizabeth, married H. O. Lamb; and she died in 1876, leaving her husband surviving her. Martha Jane was married to H. A. Freeland.

The widow and the minor children resided upon the home land in Jackson County until 1869, when they removed to Shawnee County.

In 1872, the widow conveyed eighty acres of the 160 acres of Shawnee County land to Almeda Elizabeth; in 1873, she conveyed 120 acres of the land in Jackson County to James M. Foster; and in March, 1879, she conveyed the remaining eighty acres of the Shawnee County land to Martha Jane. In July, 1869, she conveyed the land in Lyon County to Charles N. Lamb and Watson M. Lamb, from whom, by a connected chain of conveyances, the Ernsts claim ownership. In 1873 and 1874, James Monroe Foster conveyed the 120 acres received from his mother, to several parties, while he was respectively nineteen and twenty years of age. The remaining forty acres of the quarter-section in Jackson county were conveyed by Ellen H. Foster to Thomas Taylor in 1874. The personal estate consisted of some stock and farming implements, and there is testimony that the average annual income from both real and personal property was about one hundred dollars. In October, 1893, the heirs named in the will who were minors brought, in the District Court of Lyon County, an action against the Ernsts; and, upon a second trial of the same, judgment was given in favor of the plaintiffs. The Foster heirs brought, in the District Court of Jackson County, a like action against Ousler and others to whom the Jackson County land had been conveyed; but that court placed a different interpretation upon the will, and gave judgment in favor of the defendants. The proceedings in each case were brought here for review, and the cases were submitted together upon the same arguments.

*Charles B. Graves*, for plaintiffs in error; *I. E. Lambert* and *H. D. Dickson* of counsel.

*L. B. Kellogg* and *H. C. Root* for defendants in error.

*H. C. Root* for plaintiffs in error.

*James C. Lowell* for defendants in error, except H. O. Lamb.

JOHNSTON, J. The determination of both cases depends upon the construction to be placed upon the will of Aaron Foster, deceased. On the part of his heirs, it is claimed that the widow took only a life estate and that the conveyances made by her transferred no more than her life interest. On the other side, it is claimed that the widow took a life estate with power to dispose of the fee, the remainder to be divided equally among the three youngest heirs. The clause upon which a doubt has arisen is as follows : " To my beloved wife, Ellen H. Foster, all the residue of my real and personal property, to have and to use and to dispose of during her natural life, and after her death to be divided equally among my three youngest heirs, namely : Almeda Elizabeth Foster, James Monroe Foster, and Martha Jane Foster."

It will be observed that the testator had made provision for all of his children who had reached majority, except one, and to him he bequeathed a quarter-section of land. The wife and three minor children remained to be provided for. He gave and bequeathed to his wife all the residue of his property to have and to use ; but with power to dispose of the same during her lifetime, and the remainder to be divided equally among the three younger children. The purpose of the testator, when ascertained, must control in the interpretation of this will. It is to be construed, not alone by its language, but by the condition of the testator's family and estate ; and by taking into consideration the circumstances surrounding him at the time of its execution, the court is to put itself as far as possi-

1. Testator's surrounding circumstances considered.

ble in the position of the testator. The language of the devise was, that only a life estate was given to the widow; but added to that estate, in express terms, is the power of disposition. Looking at the condition of the testator's family and the character of the estate at the time the will was made, it is not difficult to understand why the power of disposal was conferred. There were three quarter-sections of land, but the lands in Shawnee and Lyon Counties were unimproved and practically unproductive. The home farm in Jackson County was improved to some extent, and there was some personal property; but the total annual income at that time, as the testimony tends to show, did not exceed one hundred dollars. There was thrown upon the widow the burden of paying funeral expenses, the cost of settlement of the estate, and of feeding, clothing and educating the three minor children; and, to preserve the estate, it was necessary that she should pay the taxes upon the unimproved lands, as well as on the land which was productive. It is clear that the annual income of one hundred dollars would not go far in the discharge of these obligations. Where were the means for such purposes to be obtained by her? Clearly, the testator must have contemplated that these duties would be performed and expenses paid by his widow; and, as the annual income from the estate was far from sufficient, he evidently intended that the widow should dispose of so much of the property as would enable her to carry out his purposes. He seems to have proceeded upon the theory that she was equally interested with him in the welfare of the children, and he trusted her to care for them, and to manage and dispose of the property in such a manner as would inure to their greatest advantage. That she faithfully carried out the purposes

of the testator appears from the record. About the time that the Lyon County land was sold, houses were built and improvements made by her on the Shawnee County land; and, without trying to use and hold the land during her lifetime, as she might have done, she gave and transferred the same to her two daughters. Although not expressly stated, it is to be inferred that the money derived from the sale of the land was used in improving that which was given to her daughters. She gave the greater part of the home farm to James Monroe Foster; and, although he sold the same for full consideration, he is now, after more than twenty years, and after many transfers of the land, seeking to recover it back and to retain the money which he received, as well. The widow appears to have given all her estate to the children long before her death, which occurred in 1888. She was without means when she died, and in fact the expenses of burial were in part borne by the public.

Viewed in the light of existing conditions and surrounding circumstances, the intent of the testator is plainly indicated. Aside from that, it may be said that, looking at the language of the will, the power of disposition is as broadly and plainly given to the widow as the reversion is given to the heirs. The words giving this power cannot be disregarded. It is a general rule that a will should be con-

3. Will construed to give effect to every part.

strued so as to give effect to every part thereof, providing an effect can be given to it which appears to be consistent with the general purpose of the testator as gathered from the entire instrument. Then, again, it will be observed that the disposition of real and personal property was the same. Both are placed in the same class, and like power is given to the widow with respect to the disposition of each. Doubtless, more than the mere use

of the personal property was intended to be given, and the real estate being devised in the same way illustrates to some extent the meaning of the testator. We agree with the contention of the heirs, that the power of disposal given in the will did not enlarge to a fee the estate taken by the widow. There was devised to her a life estate, and added to that was the separate and distinct gift of the disposal of the fee. This gave her authority to convey the fee, and the part undisposed of would descend to the children in accordance with the will. As tending to support this view we cite : *Wiley v. Gregory*, 135 Ind. 647 ; *Jenkins v. Compton*, 123 id. 117 ; *Roberts v. Lewis*, 153 U. S. 367 ; *Wooster v. Cooper*, 53 N. J. Eq. 684, 33 Atl. Rep. 1050 ; *Benz v. Fabian*, 35 Atl. Rep. (N. J. Eq.) 760 ; *Proctor's Estate*, 63 N. W. Rep. (Iowa) 670 ; *Little v. Giles*, 25 Neb. 313.

2. Power to dispose of fee given with life estate.

The judgment of the district court of Lyon County, in No. 10014, will be reversed, and the cause remanded with direction to enter judgment in favor of the plaintiffs in error. The judgment of the district court of Jackson County, in No. 10115, will be affirmed.