No. 27,749.

O. G. HINSHAW, *Appellee,* v. MABEL WRIGHT, ETHEL MILLER and
F. L. MARTIN, as Individuals and as Executors, etc., *Appellants.*

(262 Pac. 601.)

SYLLABUS BY THE COURT.

1. WILLS—*Construction as a Whole.* Rule followed that to ascertain the character and extent of a devise of real property all the provisions of a will pertaining thereto must be read and construed together, not by giving controlling significance to one of the terms of the devise and ignoring the others.

2. SAME—*Restriction on Right of Devisee's Creditors to Attach—Provision for Devise Over in Case of Invalidity.* No rule of law or of public policy is violated by a testator by providing that property devised by him shall not be subject to attachment for the compulsory satisfaction of the debts of the devisee, nor by providing for a devise over in the event that such an inhibition against involuntary alienation should be judicially declared to be invalid.

3. SAME. A father devised 200 acres of land to his son declaring it to be in fee simple, but providing that the land should not be subjected to attachment for the son's debts, and providing for a defeasance and making another testamentary disposition of the land if the restrictions he had imposed upon the devise to the son should be held to be invalid by a binding adjudication. *Held,* the first devise was good; a creditor of the son could not subject the land to attachment; and the peculiar terms of the will offended against no rule of law or public policy.

Appeal from Reno district court; WILLIAM G. FAIRCHILD, judge. Opinion filed January 7, 1928. Reversed.

*F. Dumont Smith, F. L. Martin* and *James N. Farley,* all of Hutchinson, for the appellants.

*C. M. Williams, D. C. Martindell* and *W. D. P. Carey,* all of Hutchinson, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: The question in this appeal is whether a certain 200-acre tract of land devised to John Jones by his father was subject to attachment and execution for the debts of the devisee, and its correct solution requires a construction of the will, which in part reads:

"2. I give and devise to my daughter, Mabel Wright, of Langdon, Kansas, the following-described real estate, situate in the county of Reno, and state of

---

Deeds, 18 C. J. p. 361 n. 79.  Wills, 40 Cyc. pp. 1386 n. 85, 1388 n. 90, 1413 n. 22, 1686 n. 52, 1693 n. 13, 1707 n. 10; 26 R. C. L. 205, 318.

Kansas, to wit: [320 acres described] to have and to hold the same in fee simple.

"3. I give and devise unto my daughter, Ethel Miller, . . . [320 acres described] to have and to hold the same in fee simple.

"4. I give and devise to my son, Victor Jones, [240 acres described] to have and to hold the same in fee simple.

"5. I give and devise to my son, John Jones, [200 acres described] to have and to hold the same in fee simple.

. . . . . . . . . . . . . . . . .

"9. I am free to make the devises and bequests herein specified and they are made voluntarily for the use and benefit of the devisees and legatees herein named and no one else, and are made upon the express condition that the same shall not be subject to attachment, execution, garnishment or any legal process in favor of any creditor of such devisee or legatee. I do not feel under moral obligation to pay the indebtedness of any of the devisees or legatees of this last will and testament, and if any creditor shall attempt in violation of my will to subject my bequests or devises herein made or any of the real estate herein devised to the payment of any of the debts or obligations of the said devisee or legatee, and the court shall finally hold that such devise or bequest is subject to the payment of debts of a devisee or legatee, it is my will that the portion of the property which I have devised or bequeathed to any such devisee or legatee shall immediately become a part of the residue of my estate and such devise and bequest shall immediately lapse and end.

"The share of such devisee and legatee in such residue shall become a trust fund in the hands of the executors and shall be paid to the said devisee or legatee for necessities from time to time as the executors may determine and decide; and such fund, if held or declared by the court to be subject to judicial process of attachment, garnishment, or other legal proceedings for debt of the devisee or legatee, shall become a part of my estate, and I give and devise the same to my other children not involved in debt, share and share alike.

"10. All the residue of my estate, . . . I give and devise to my four children, herein named, . . . share and share alike.

"11. I hereby nominate and appoint as executors of this my last will and testament, my daughters, Mabel Wright, and Ethel Miller, and Frank L. Martin, and I hereby authorize them as executors to do and perform every act necessary to carry out the provisions of this my last will and testament, and if it shall become necessary because of the provisions of this my last will and testament, that any of the real estate herein devised shall become a part of the residue of my estate, I hereby authorize my executors to make a sale thereof and to execute the necessary writings, contracts and deeds of conveyance, to sell and dispose of the same and convert the same into money for distribution as a part of the residue of my estate."

The plaintiff, D. G. Hinshaw, brought this action against John Jones (J. W. Jones, Jr.) on five promissory notes. The land devised to John was attached on affidavit and publication service. Jones

was not personally served; his place of abode was unknown and he had not been heard of for some years.

The defense to plaintiff's action was undertaken by the executors and by the sisters and brother of John. They were permitted to intervene and filed their interplea, setting up the will, the long absence and silence of John, the possession of the executors, the non-liability of the property to attachment under the terms of the will, and praying for a construction of the will and for a judicial declaration of the rights of the intervenors and other heirs and devisees of the testator, and to quiet their title and other equitable relief.

Plaintiff's demurrer to the interplea was sustained, the attachment was upheld, and the property ordered sold to satisfy the default judgment entered against John.

The intervenors appeal.

The appellee would justify the trial court's judgment on the ground that the devise of the land to John Jones vested in him an unqualified title in fee simple, and that the provisions of paragraph 9 of his father's will are contrary to law, against public policy, and void.

Let us see about this proposition. The fact that the devise to John in paragraph 5 is set down ahead of the qualifying and conditional provisions in paragraph 9 is of no particular significance. In *Markham v. Waterman,* 105 Kan. 93, 181 Pac. 621, it was said:

"The old rule that a seemingly unqualified devise in an independent and prior clause of a will cannot be diminished by separate, subsequent clauses of the will (*McNutt v. McComb,* 61 Kan. 25, 58 Pac. 965; 4 Kent Comm. 270) has been largely superseded by the modern Kansas rule, that the testator's intention is to be gleaned 'from the four corners of the instrument'—from the entire text of the document. Some of our earlier cases foreshadow the coming of this doctrine (*Williams v. McKinney,* 34 Kan. 514, 519, 9 Pac. 265; *Ernst v. Foster,* 58 Kan. 438, 47 Pac. 527), and this court was fully committed to it in *Bullock v. Wiltberger,* 92 Kan. 900, 142 Pac. 950, and has followed it consistently in all the later cases [citations]." (p. 95.)

In *Pearson v. Orcutt,* 106 Kan. 610, 612, 189 Pac. 160, it was said:

"The defendants place much reliance upon *McNutt v. McComb,* 61 Kan. 25, 58 Pac. 965. . . . The similarity of that will to the one here involved, with respect to the estate conveyed, is obvious. But several considerations serve to impair the force of the decision as a controlling precedent here. It was influenced largely by the application of the ancient and artificial rule that where the language of a will on its face imports the vesting of an absolute fee, that effect shall not be denied by reason of a subsequent clause attempting a limitation thereon. This rule is one of a number of somewhat similar char-

acter made use of in solving problems arising from conflicting provisions by giving preference to one or the other according to some hard and fast formula, instead of attempting to reconcile them—to ascertain and carry out the actual wishes of the testator as derivable from his language and the attending circumstances. The primary rule of construction now followed by this court, in that situation as in all others, is to give effect to the testator's real intention as gathered from the entire document, without regard to the place in which it occurs, except so far as that circumstance may logically throw light on his meaning."

Our more recent cases reiterate this later rule. (*Chaplin v. Chaplin,* 105 Kan. 481, 181 Pac. 621; *West v. West,* 106 Kan. 157, 186 Pac. 1004; *Utilities Co. v. Bowersock,* 109 Kan. 718, 729, 202 Pac. 92; *Mansfield v. Crane,* 116 Kan. 2, 225 Pac. 1087; *Bierer v. Bierer,* 121 Kan. 57, 245 Pac. 1039; *Regnier v. Regnier,* 122 Kan. 59, 250 Pac. 1069.)

In view of the foregoing, the devise to John is to be defined by giving due significance to the provisions of paragraph 9 as well as to those of paragraph 5.

What merit is there to appellee's contention that the provisions of paragraph 9 are contrary to law and public policy? Appellee invokes the statute (R. S. 22-258) which declares that every devise by will shall convey all the title the testator had "unless it shall clearly appear by the will that the testator intended to convey a less estate." But there can be no cavil here about the testator's intention. He expressly intended to convey to his son only such an estate as could not be subjected to judicial process for the compulsory satisfaction of John's debts. Whether an estate so limited and thus secure against involuntary alienation is valid is a question which we will presently consider, but the father's intention was too plain for serious debate. No other construction is possible, and the testator's avowed intention may neither be ignored nor excised. (*Hurst v. Weaver,* 75 Kan. 758, 90 Pac. 297; *Bryant v. Flanner,* 99 Kan. 472, 476, 162 Pac. 280; *Regnier v. Regnier,* 122 Kan. 59, 251 Pac. 392.)

In *Herzog v. Title Guarantee & Trust Co.,* 177 N. Y. 86, 67 L. R. A. 146, 149, it was said:

"The intent to be discovered is not whether he [the testator] intended to make a valid disposition of his estate, but what provisions he in fact intended to make. When that is found, it is for the court to determine whether such intended provisions are valid or otherwise." (p. 91.)

Coming then to the question of controlling importance, what is

there in the provisions of paragraph 9 which can be judicially declared to offend against the public policy of this state. By constitution and by statute the family homestead and other exempt property are secure against involuntary alienation, and this principle of law gives a keynote to the pertinent public policy of this state on this subject. And a wealth of well-reasoned decisions declare that no rule of public policy is violated by a grantor or testator in tying up for limited intervals the right of alienation of property conferred upon his grantees or devisees.

In *Wright v. Jenks,* ante, p. 604, 261 Pac. 840, it was said: .

"This court has frequently admitted that it has not been able to discover any valid objection to the placing of reasonable restrictions upon the alienation or devolution of property for limited periods—to make provision for the support of persons ill-fitted to wage life's battles (*Abbott v. Perkins,* 90 Kan. 45, 132 Pac. 1177; *Davis v. Davis,* 121 Kan. 312, 246 Pac. 982); to furnish sustenance for an improvident son (*Sherman v. Havens,* 94 Kan. 654, 146 Pac. 1030); to prevent or hinder a testator's estate being dissipated by grandchildren for whom in his natural affection and solicitude he would provide a life-enduring competence. (*Grossenbacher v. Spring,* 108 Kan. 397, 402, 195 Pac. 884.)" (p. 608.)

In *Pond v. Harrison,* 96 Kan. 542, 152 Pac. 655, this court upheld a testamentary bequest of the net income of property to a son which provided that—

" 'Said net earnings shall not be subject to the order or assignment of or by said William H. Harrison or his wife or the survivor of them, nor shall the same be subject to pay their debts on execution, attachment or otherwise, but is a humane provision of mine to keep them from absolute want or becoming a public charge or charges in their declining years.' " (p. 544.)

In that case the property yielding the devised income was destroyed by fire and rebuilt with the proceeds of the insurance policy, but the lumber bill was not paid in full. It was held that the terms of the bequest were valid, and that even a materialman's claim to a lien was unenforceable against the property. To the same effect was *Everitt v. Haskins,* 102 Kan. 546, 171 Pac. 632. The court is constrained to hold that the provisions of paragraph 9 did not offend against any rule of law or public policy.

Appellee, however, presses upon our attention the rather unusual form of the testator's limitations upon the devise to John and the peculiar character of the restrictions placed upon alienation, or on the consequences of involuntary alienation. The will provides: "If the court shall finally hold that such device or bequest is sub-

ject to the payment of debts of a devisee or legatee, it is my will that the property I have devised or bequeathed . . . shall immediately lapse, [and] become a trust fund in the hands of the executors," etc. Did such a restriction upon involuntary alienation have the legal effect of "nullifying" an order of court? We think not; at least no more than the valid terms of any will may, in a very narrow sense, be said to restrict the scope of a court's jurisdiction. There is ample jurisdiction to interpret a will, but it is quite common for wills to contain provisions which would "nullify" in advance any orders of court doing violence to their plain and lawful terms. If what we have just said does not render any further discussion merely academic, we would hold that the legal effect of a final judgment holding the property subject to the payment of the debts of the devisee would be to terminate the estate thus devised—terminate it in a lawful and orderly manner. In *Wright v. Jenks,* supra, it was said:

"We have referred above to the power of a grantor or testator to place reasonable restrictions for limited periods upon the right of his grantee or devisee to alienate the property granted or devised. But a mere admonitory gesture in a deed or will is insufficient to do so. (*Durand v. Higgins,* 67 Kan. 110, 72 Pac. 567; *Brady v. Fuller,* 78 Kan. 448, 96 Pac. 854; *Howe v. Howe,* 94 Kan. 67, 145 Pac. 873; 18 C. J. 361. See, also, *Bennett v. Chapin,* 77 Mich. 526; and *O'Connor v. Thetford,* [Tex. Civ. App.] 174 S. W. 680.) To make such restriction effective some practical bar to a breach of such restriction must appear, *e. g.,* by the intervention of trustees having active duties to discharge during the restrictive period; by provision for reëntry or alternative grant or devise over for breach of conditions prescribed in the instrument itself. (*O'Brien v. Wetherall,* 14 Kan. 616; *Abbott v. Perkins,* 90 Kan. 45, 48, 49, 132 Pac. 1177; *Grossenbacher v. Spring,* 108 Kan. 397, 402, 195 Pac. 884.) On this general subject see note to *Latimer v. Waddell,* 119 N. C. 370, in 3 L. R. A., n. s., 668-678." (p. 609.)

Among our own cases which recognize that conditions subsequent may bring about a defeasance of a vested estate were *Strom v. Wood,* 100 Kan. 556, 164 Pac. 1100; *Wright v. Cummings,* 108 Kan. 667, 196 Pac. 246; and *Campbell v. Durant,* 110 Kan. 30, 33, 34, 202 Pac. 841.

Here there is a devise over if the conditions of the first devise are defeated. Paragraph 9 contains provisions both of condition and limitation, and in either case there was nothing devised to John which was properly subjected to attachment at the instance of the plaintiff. The pertinent cases cited by appellee have not been over-

looked; but they are not Kansas cases, and they are at variance with the spirit of our jurisprudence.

The judgment of the district court is reversed and the cause remanded, with instructions to set aside the attachment and to enter judgment in favor of the intervenors.