No. 32,676

The Guarantee Title and Trust Company, *Appellant*, v. George H. Siedhoff et al. (*Defendants*), Charles F. Smyth et al., *Appellees*.

(58 P. 2d 66)

Opinion filed June 6, 1936.

*C. H. Brooks, Willard Brooks* and *Paul R. Kitch*, all of Wichita, for the appellant.

*W. D. Jochems,* of Wichita, for the appellees.

The opinion of the court was delivered by

Thiele, J.: Plaintiff appeals from an adverse judgment in proceedings in aid of execution, two principal questions being involved. One is whether certain expenditures made by the father of the defendant, Charles F. Smyth, were loans or advancements. This question involves some subdivisions which will be hereafter separately discussed. The other question is whether an attempted restraint on alienation of a devise to Charles F. Smyth, contained in the will of his father, is valid.

On June 16, 1930, the plaintiff recovered a judgment against Charles F. Smyth for $15,000. The proceedings in question were had in an effort to collect it. Charles F. Smyth was the son of Charles H. Smyth, a man of wealth who lived in Wichita prior to his death in November of 1933. The age of the son was not shown, but from about 1918 he seems to have been engaged in many busi-

ness ventures, all of which, with one exception, resulted in losses. About the year 1928 the father and son participated in the sale of the Orient Railroad, whatever its correct title may have been, with a resulting profit of over $200,000. In an action in the United States district court, involving the father's income tax for 1928, the father represented that he and his son were equal partners in the Orient matter; that half of the earning was the son's, but that the son was indebted to him for losses and obligations incurred by the son and paid by the father, and therefore his retention of the entire amount did not make it all income. The father prevailed. Whether the settlement there made covered all matters to that date is not clear, but it may be so assumed. Thereafter the son became interested financially in the construction of a theater in Wichita. The judgment of $15,000 mentioned grows out of that matter, and is a part of the transaction involved in *Siedhoff v. Campbell,* 141 Kan. 255, 40 P. 2d 404. Although the evidence is perhaps susceptible of various interpretations, it appears the father protected the son in the subsequent bankruptcy of the theater company by advancement or loan of moneys in an amount of at least $42,500. Owing to the fact that much of the testimony referred to the matters prior to the income tax claim, and that in many instances the abstract fails to show dates, names and amounts clearly, we do not refer to some claimed loans that perhaps were considered by the trial court. But subsequent to 1928, the father advanced for the son's use to pay for life insurance premiums, revenue taxes, living expenses, payments to his wife, etc., at least $25,000 more. On May 4, 1933, the father and son took account of the moneys advanced by the father, and the son then executed and gave to his father his demand note for $51,274. No part of this note had been paid when the father died in November, 1933. The father left a will which was duly probated. His widow, Anna M. Smyth, was appointed and qualified as executrix. So far as we need here notice, the will gave to the wife a life estate in the personal property with power of disposal, the identifiable remainder to the testator's three children, Charles F. Smyth and two daughters. Subject to a monthly payment of $500 each to his three children, he also gave his wife a life estate in his real estate. Subject to the wife's life estate, he gave to his son a life estate in certain real estate, and provided for the disposition of the remainder, with which disposition we are not concerned. Somewhat similar devises were also made to the two daughters. Any of the life tenants was

given power to lease on limited terms. The twelfth paragraph of the will then provided:

"Until the termination of the life estates herein devised, no person shall have any right to sell, mortgage or otherwise dispose of any interest in said real estate (except leasing as aforesaid), nor shall the same be subject to the debts of said devisee by execution, garnishment, attachment or other process, provided," etc.

The provision referred to the power of a daughter to handle an undivided interest in real estate so that she could protect the same. Following the qualification of the executrix, Charles F. Smyth executed and delivered to her an assignment of the $500 per month bequest "in consideration of the indebtedness due from me to the estate of Charles H. Smyth." The present proceedings were commenced May 19, 1934, and hearings were continued from time to time. In October, 1934, Anna M. Smyth, as executrix, was permitted to interplead and set up the assignment by Charles F. Smyth and later to amend and set up the note of $51,274. At the conclusion of the hearings, the trial court rendered judgment that the Charles F. Smyth note to his father constituted a valid indebtedness to the father's estate; that it was not necessary to determine whether or not an equitable lien was created in favor of the estate for the indebtedness superior to the judgment of plaintiff, that question being reserved and not decided; that plaintiff recover nothing, and that an injunction theretofore issued against further proceedings by execution against any of the property coming to Charles F. Smyth by virtue of his father's will be made permanent. Plaintiff's motion for a new trial being denied, it appeals.

Taking up for consideration the question first propounded as outlined above, it is contended the advances and expenditures made by the father to the son were advancements; that the note was given in contemplation of the then existing and unpaid judgment of plaintiff; that the assignment was given in contemplation of that same judgment; that in any event if the advance represented by the note was a loan, it was forgiven by the will. The statements of Charles F. Smyth as to the manner in which he secured the moneys represented by the note, together with much supplementary proof in connection therewith, most certainly made a sufficient showing to warrant the trial court in holding a valid indebtedness existed. The statement of facts herein summarizes the testimony, and we see no reason to disturb the conclusion. The fact the father took the note

from the son is of itself very persuasive evidence he had not considered advances previously made as gifts or advancements. Neither did he have to be solicitous about plaintiff's judgment—it would have been quite natural that he feel his property should not pay it. An examination of the will as abstracted shows the contention the will forgave the debt is not good.

We pass now to the provision of the will of Charles H. Smyth restricting alienation. The trial court, by enjoining further proceedings by execution, in effect held the provision of the will restricting alienation was valid. The attempted restriction is quoted above. It will be observed that although it provides there shall be no sale, mortgage or other disposal until after termination of the life estates devised, there is no provision penalizing an alienation in violation thereof. Many authorities are cited in the briefs, but we shall refer to only a few which include those relied upon by appellant and appellees.

In *Wright v. Jenks,* 124 Kan. 604, 261 Pac. 840, the testatrix devised a life estate to her husband and thereafter equally to her two children "during their natural lives and to their children of their bodies after them, they not having the right to sell, encumber or dispose of the same; in event of either dying without heirs the property to revert to the survivor of heirs." (p. 605.)

During the lifetime of the father, the son in 1911 conveyed his interest to Jenks. The sister died in 1926 leaving no heirs of her body and without having alienated in any manner. Wright contended his conveyance to Jenks was in contravention of the will and of no effect. After discussing the character of the title of the son under the will, and the general subject of reasonable restrictions on alienation, it was said in the opinion:

"We have referred above to the power of a grantor or testator to place reasonable restriction for limited periods upon the right of his grantee or devisee to alienate the property granted or devised. But a mere admonitory gesture in a deed or will is insufficient to do so. (*Durand v. Higgins,* 67 Kan. 110, 72 Pac. 567; *Brady v. Fuller,* 78 Kan. 448, 96 Pac. 854; *Howe v. Howe,* 94 Kan. 67, 145 Pac. 873; 18 C. J. 361. See, also, *Bennett v. Chapin,* 77 Mich. 526; and *O'Connor v. Thetford,* [Tex. Civ. App.] 174 S. W. 680.) To make such restriction effective some practical bar to a breach of such restriction must appear, *e. g.,* by the intervention of trustees having active duties to discharge during the restrictive period; by provision for reëntry or alternative grant or devise over for breach of conditions prescribed in the instrument itself. (*O'Brien v. Wetherall,* 14 Kan. 616; *Abbott v. Perkins,* 90 Kan. 45, 48, 49, 132 Pac. 1177; *Grossenbacker v. Spring,* 108 Kan. 397, 402, 195 Pac. 884.)

On this general subject see note to *Latimer v. Waddell,* 119 N. C. 370, in 3 L. R. A., n. s., 668-678." (p. 609.)

And the law of the case, as stated in the syllabus, is:

"An attempted restriction upon the alienation of property is ineffective where no person but the alienor is concerned and where the grantor or testator who sought to impose the restriction prescribed no effective barrier to enforce it, such as an active trusteeship, provision for reëntry, alternative grant or devise over for breach thereof." (Syl. ¶ 3.)

The next month after the above case was decided, *Hinshaw v. Wright,* 124 Kan. 792, 262 Pac. 601, was decided. It is this case upon which appellees principally rely as upholding the trial court's conclusion in the case now before us. The provisions of the will are fully set out in the opinion. Briefly stated, the testator devised to his four children specific tracts of real estate, and by a subsequent paragraph of his will stated the devises were upon the express condition the same—

"shall not be subject to attachment, execution, garnishment or any legal process in favor of any creditor of such devisee or legatee . . . and if any creditor shall attempt . . . to subject my bequests or devises . . . to the payment of any of the debts or obligations of the said devisee or legatee, and the court shall finally hold that such devise or bequest is subject to the payment of debts of a devisee or legatee, it is my will that the portion of the property which I have devised or bequeathed to any such devisee or legatee shall immediately become a part of the residue of my estate and such devise and bequest shall immediately lapse and end." (p. 793.)

And provision for a trust was made. Hinshaw undertook to appropriate the share of one son for payment of a note, and prevailed. On appeal Hinshaw contended the devise was in fee simple, and the restrictions on alienation were contrary to law, against public policy and void. This court reversed. In discussing the question, this court first considered whether the restraint offended against any rule of law or public policy, and held that it did not. Appellees read the decision as though that holding is to the effect that a simple restraint on alienation is good. Reference to the opinion shows, however, the court then proceeded to consider the question of an effective bar or penalty which would bring to an end the granted or devised estate in event of broken conditions, quoting with approval from *Wright v. Jenks,* as above set forth. That appellees' contention the case holds a restraint on alienation is good without some practical bar to a breach of the restraint or restriction, is not war-

ranted by what is said in the opinion, is evident from the law of the case as stated in the syllabus, which recites as follows:

"No rule of law or of public policy is violated by a testator by providing that property devised by him shall not be subject to attachment for the compulsory satisfaction of the debts of the devisee, nor by providing for a devise over in the event that such an inhibition against involuntary alienation should be judicially declared to be invalid." (Syl. ¶ 2.)

The question was involved in *Somers v. O'Brien,* 129 Kan. 24, 281 Pac. 888. The parents of Mrs. O'Brien deeded lands to her as trustee for herself, during her natural life, and, among other things, provided they should not be subject to alienation by her nor liable for her debts. We are not concerned with the particular facts as to appropriation for debts, but only with the attempted restriction on alienation, it being said:

"Touching the restrictions upon the power of alienation named in the deed, this court has repeatedly held that when such restrictions are properly made they are valid, but to be effective some enforceable result or consequence for the breach of such restrictions must be prescribed in the instrument. (*Hinshaw v. Wright,* 124 Kan. 792, 262 Pac. 601; *Wright v. Jenks,* 124 Kan. 604, 261 Pac. 840.)" (p. 28.)

And in 80 A. L. R. 1007 is an annotation on validity of provisions of instrument creating legal estate attempting to exempt it from claims of creditors, from which it appears the holdings of this court are in accord with the great weight of authority. (See, also, 21 C. J. 919 [Estates, § 10]; 21 R. C. L. 327 [Perpetuities, § 61]; 28 R. C. L. 316, 318 [Wills, §§ 302, 305]; 2 Simes Future Interests 308, § 465.) Other cases from Kansas cited in the quotations above made, and in the opinions referred to, might be discussed, but we deem it unnecessary. The effect of all of them is that a provision in a devise, either of a fee-simple title or a life estate, that it shall not be subject to alienation, or shall not be liable for the debts of the devisee, nor subject to be seized, attached or sold for his debts, is ineffectual and void where there is no limitation over nor provision for forfeiture in event of violation of the condition. Mere admonition is not sufficient. To make the restriction effective there must be a practical bar to a breach of the restriction as above indicated.

In the case before us, the attempted restriction on alienation, and against appropriation for debts of the devisee does not pass beyond an admonitory stage, and is not good. Referring to the permanent injunction granted, appellees admit it should not cover personal property, as the attempted restriction on alienation pertained only

to real estate. But it follows from what we have said the trial court erred in enjoining plaintiff from levying execution against any interest of Charles F. Smyth in any property received by him under his father's will. The trial court held it was not necessary that it determine the question of priority between the lien of plaintiff's judgment and the claimed equitable lien of the estate—probably because of its ruling with respect to the attempted restriction on alienation. There having been no execution issued against the real estate, and, so far as the record shows, no order of final settlement directing the executrix to pay Charles F. Smyth any personal property, and the trial court having not passed on any phase of priority, we shall not discuss it further.

That part of the judgment of the trial court that the note of Charles F. Smyth to Charles H. Smyth constitutes a valid indebtedness to the estate of Charles H. Smyth is affirmed. That part of the judgment granting a permanent injunction against further proceedings by execution against any property coming to Charles F. Smyth by virtue of his father's will is reversed, and the cause is remanded with instructions to set aside and vacate the order of injunction.