No. 34,129

PAULINE JACK, WILLIAM F. JACK and W. G. JACK, *Appellees*,
v. WINNIE SEVERNS, *Appellant*, et al.

(86 P. 2d 514)

Opinion filed January 28, 1939.

*J. W. Dalton*, of Sedan, for the appellant; *Clay Tallman* and *E. O. Patterson*, both of Tulsa, Okla., for Stanolind Crude Oil Purchasing Company.

*A. R. Lamb, Clement A. Reed*, both of Coffeyville, and *R. O. Robbins*, of Sedan, for the appellees.

The opinion of the court was delivered by

DAWSON, C. J.: This was an action to determine the rights of these litigants under the will of the late W. F. Lemmon, of Montgomery county, and for an accounting of the proceeds of certain royalty interests incidental to the main issue between the parties.

In the course of his lifetime W. F. Lemmon became the owner of 440 acres of Chautauqua county land. Some of this land was subject to oil and gas leases at the times of its acquisition, and in some instances he acquired certain leasehold interests in some of these lands before he acquired the land itself. These details, however, will require no present attention.

On August 30, 1926, Lemmon executed a deed of general warranty conveying to L. D. Severns four described eighty-acre tracts of land in sections 9 and 10, township 35 south, range 12 east, in Chau-

· tauqua county, in fee simple, with a reservation therein (designated A for convenience) which read:

"This deed is made subject to all the gas and oil leases on said land and all the conditions therein. Also, said W. F. Lemmon reserves and retains to himself and his heirs and assigns a one undivided sixteenth ($\frac{1}{16}$) royalty interest in all gas or oil produced from any of said land at any time, and said L. D. Severns shall have all the other royalties provided for in said leases, except said Lemmon may have all the ⅛ royalty on the two producing oil wells now on said land."

Three years later, on September 23, 1929, Lemmon sold and conveyed to L. D. Severns two described forty-acre tracts in the same sections 9 and 10 mentioned above. This conveyance was made by warranty deed, in fee simple with a reservation therein (designated B for convenience) which read:

"Excepting and reserving to said W. F. Lemmon and his former assigns all gas and oil rights and all other mineral rights in and to said land, and all gas and oil improvements thereon, with full power to operate for said gas, oil and minerals without any molestation or interference by the grantee herein or his heirs or assigns. It being distinctly understood that said grantee in this deed gets no gas or oil rights or other mineral rights by this deed."

At the time of Lemmon's death, in September, 1931, the members of his family chiefly concerned in this lawsuit were these: Mrs. B. L. Brockman, a daughter; Rees H. Lemmon, a son; George J. Lemmon, a son, and Margaret Lemmon, wife of George; W. G. Jack, widowed husband of Ermie, a deceased daughter; and George Amour Jack, Pauline Jack and Wm. F. Jack, grandchildren of Lemmon by his deceased daughter Ermie and her husband, W. G. Jack. In his will, which was duly probated, Lemmon, the testator, made certain bequests of no present concern. One devise was that of the family homestead with its household goods which the testator gave to his three grandchildren at a valuation of $800 to be charged against their collective shares of his estate.

Another devise or bequest was as follows:

"(4) I hereby give, devise and bequeath to Mrs. B. L. Brockman, my daughter, all of my oil and gas rights in the SW ¼ of the SW ¼ of section three and the NW ¼ of the NW ¼ of section ten, township thirty-five, range eleven, in Chautauqua county, Kansas, including any and all other rights which I may own or hold at the date of my death in and to said land."

Next followed the provisions of the will which provoked this lawsuit. They read:

"(6) I hereby give, devise and bequeath to Mrs. B. L. Brockman, my daughter; [W. G.] Jack, my son-in-law; Rees H. Lemmon, my son, and

George J. Lemmon, my son, share and share alike, all of the real estate I may own in fee at my death which is situated in Chautauqua county, Kansas.

"(7) All the balance of my property not heretofore disposed of, which I may own at the time of my death, real, personal and mixed, wherever situated, and of every kind and character, I hereby give, grant, devise and bequeath as follows, to wit:

"To Mrs. B. L. Brockman, my daughter, one-fifth of all such property.

"To my son Rees H. Lemmon, one-fifth of all of such property.

"To my son George J. Lemmon, one-tenth of all such property.

"To Margaret Lemmon, wife of George J. Lemmon, a one-tenth of all such property.

"To George Amour Jack, Pauline Jack and William F. Jack, the three children of my deceased daughter Ermie L. Jack, one-fifteenth each of all such property.

"To [W. G.] Jack, husband of my deceased daughter Ermie L. Jack, a one-fifth of all such property."

In 1933 George Amour Jack, grandson of the testator, died, leaving as his sole heir his father, W. G. Jack.

In 1935 Mrs. Brockman and her two brothers, Rees and George Lemmon, executed to the defendant, Winnie Severns, their mineral deed which purported to convey all the property rights and interests reserved in the deeds of 1926 and 1929 from Lemmon to L. D. Severns (designated A and B for convenience), as set out above.

Since these happenings, oil and gas wells have been developed on the lands conveyed by the deeds of 1926 and 1929. The Stanolind Crude Oil Purchasing Company has received and marketed the oil produced on these lands.

On the assumption that all the oil and gas rights included in the reservations A and B in the deeds of 1926 and 1929 had been devised under paragraph (6) of Lemmon's will and had passed to Winnie Severns by the mineral deed she received from Mrs. Brockman and her two brothers, defendant Severns has exercised exclusive rights of ownership in the royalty and other mineral interests in those lands.

Hence this lawsuit by the surviving grandchildren of the testator and their father, W. G. Jack, to obtain an interpretation of the will, and for an adjudication of their interest and for an accounting. Winnie Severns was named as principal defendant, and the Stanolind Crude Oil Purchasing Company was impleaded. W. G. Jack casts his lot with his children in this lawsuit as beneficiary under paragraph 7 of the will and as sole heir of his deceased son, George Amour Jack.

Plaintiff's petition pleaded all the pertinent facts and alleged—

"That it was the intention of the said W. F. Lemmon that the property so reserved by said exhibits 'A' and 'B' should pass under said paragraph numbered 7 of said last will and testament."

Defendant demurred to this petition on the ground that it did not state a cause of action.

This demurrer was overruled and defendant appeals, contending that the reservations designated A and B which W. F. Lemmon specifically retained to himself when he executed the conveyances of 1926 and 1929 to L. D. Severns were reservations of interests in land, real property, not personal property; and as such those reserved interests passed to the beneficiaries under paragraph (6) of the will; and that they are now vested in this defendant Winnie Severns by virtue of the mineral deed she holds from Mrs. Brockman and her brothers, Rees H. Lemmon and George J. Lemmon.

Counsel for appellant cites and quotes from many standard authorities, including some of our own decisions, to the effect that reservations of mineral rights in deeds of conveyance, in substantially the same terms as those incorporated in the deeds of 1926 and 1929 set out above and designated A and B, respectively, are ordinarily recognized as interests in real estate, not as personal property. We have recently had occasion to familiarize ourselves with this feature of the law of property in *Richards v. Shearer*, 145 Kan. 88, 64 P. 2d 56; *Shaffer v. Kansas Farmers Union Royalty Co.*, 146 Kan. 84, 69 P. 2d 4; and *Serena v. Rubin*, 146 Kan. 603, 72 P. 2d 995.

Counsel for the appellees, however, do not controvert this general doctrine. In their brief they say: "While it is true that mineral rights in land is a part of the real estate, still it would be very unusual for an oil man to so describe it."

What appellees mainly depend on to maintain their cause of action against defendant's demurrer were the allegations of their petition respecting the testator's intentions as expressed in the will itself.

On behalf of appellant it is urged that parol evidence of the testator's intention is not admissible where there is no ambiguity of language in the will. That general rule is correct. (*Postlethwaite v. Edson*, 102 Kan. 104, 171 Pac. 769; *Guthrie v. Guthrie*, 130 Kan. 433, 435, 286 Pac. 195.) But mayhap this appeal can be disposed of without invoking that rule, certainly without violating it.

The primary rule for the proper interpretation of a will is to ascertain the testator's intention as expressed in the will itself. (*Ernst v. Foster*, 58 Kan. 438, 443, 49 Pac. 527; *Brown v. Brown*, 101 Kan. 335, 166 Pac. 499; *Hinshaw v. Wright*, 124 Kan. 792, 262 Pac. 601, syl. ¶ 1 and citations.)

In *Kent v. Armstrong*, 6 N. J. Eq. 637, 638, the rule was thus stated:

"In the construction of wills, the primary and important inquiry is to ascertain the intention of the testator; indeed pretty much all the rules for construing wills and devises are based upon what is the apparent or the presumed intention of the testator; and if that appears to be clear and not in violation of any established principle of law, that intention is to govern without further inquiry or regard to mere technical terms (2 *P. Wm.* 741; *Doug.* 431; 4 *Vesey* 51). And in tender regard for the supposed situation of a testator, the law regards his acts with extreme indulgence and without the presumptions which are raised against the grantor or the grantee of an estate."

The testator's intention is to be ascertained by a careful consideration of all the provisions of the will—everything "within the four corners thereof," as the lawbooks say. So let us first examine paragraph (4) of the will. In it the testator gave to his daughter all his oil and gas rights in a certain forty-acre tract which he owned in fee simple, and in the same paragraph he also gave her his oil and gas rights in another forty-acre tract which (subject to reservation B) he had conveyed away in his deed of 1929. He also devised to the daughter in the same paragraph (4) "any and all other rights" he might own or hold at his death "in said land."

It will hardly be gainsaid that in paragraph (4) the testator did not devise the fee to the first forty-acre tract mentioned in that paragraph, nor that the fee (subject to reservation B) to the second forty acres mentioned in that paragraph had been conveyed away by the testator's deed of 1929.

Coming now to paragraph (6) of the will, it seems clear that subject to the oil and gas rights bequeathed to Mrs. Brockman in paragraph (4), the first forty acres there mentioned was devised in fee simple to the four beneficiaries named in paragraph (6). Of course, the same paragraph would also pass title to any other lands which the testator may have acquired after the will was executed.

So far as determinable by a careful examination of the entire will, it is proper to infer that the testator intended to make specific disposition of his entire estate; and such is the general rule of interpre-

tation. (*Mann v. Haines,* 146 Kan. 988, 998, 73 P. 2d 1066.) But if we should sustain the contention of appellant that all the mineral rights, royalties and kindred interests possessed by the testator passed to the named beneficiaries in paragraph (6) of the will, then paragraph (7) which was formulated with painstaking detail to give the testator's residual estate to the eight beneficiaries named therein was merely a mouthful of words, signifying nothing. Such an interpretation of the will would do violence to another rule of construction. That rule is that every provision of a will should be given operative construction if possible. In *Ernst v. Foster,* 58 Kan. 438, 49 Pac. 527, it was said:

"It is a general rule that a will should be construed so as to give effect to every part thereof, providing an effect can be given to it which appears to be consistent with the general purpose of the testator as gathered from the entire instrument." (Syl. ¶ 3.)

This rule has often been invoked in our later decisions. (*Bullock v. Wiltberger,* 92 Kan. 900, 904, 142 Pac. 950; *Regnier v. Regnier,* 122 Kan. 59, 251 Pac. 392; *Votapka v. Votapka,* 136 Kan. 224, 226, 14 P. 2d 732.)

No error in the judgment of the district court is made to appear. That judgment is therefore affirmed.