No. 35,384

Louisa Weaver, *Appellee*, v. Esther M. Chatterton and
H. T. Chatterton, Her Husband, *Appellants*.

(121 P. 2d 211)

Opinion filed
January 24, 1942.

*I. T. Richardson,* of Emporia, *Walter T. Chaney* and *Lawrence J. Richardson,* both of Topeka, for the appellants.

*W. C. Roberts,* of Emporia, *E. R. Sloan, W. Glenn Hamilton, Floyd A. Sloan* and *Eldon R. Sloan,* all of Topeka, for the appellee.

The opinion of the court was delivered by

Dawson, C. J.: This was an action to determine an interest in certain Lyon county lands, predicated on the terms of the last will and testament of the late F. M. Weaver, who died in 1931. His will was probated in due season, and his widow, plaintiff herein, elected to take under the will.

The beneficiaries under the will were his widow, Louisa Weaver, and three children, Cora Irene Chenoweth, Waldo Otho Weaver, and Glen Herald Weaver. The will was executed in 1920, at which time the testator was about 78 years old, his wife about 54 years, the daughter Cora Irene was married, the son Waldo Otho Weaver was about 30 years, and the son Glen Herald Weaver was about 11 years of age.

By the terms of the will, the daughter, Mrs. Chenoweth, was given $15,000 in cash; the son Waldo was given $3,000 in cash; certain lands were disposed of in terms which have provoked this lawsuit—particularly the fourth paragraph, which reads:

"Fourth, I will, give and devise to my son Waldo Otho Weaver, the northeast quarter of section 4, township 16, range 12, also the southeast quarter of section 33, township 15, range 12, less a strip of land seven or eight acres of the northwest quarter of section 33, township 15, range 12, north of Little Creek and Elm Creek, 80 rods along the creek bed to the line of said quarter; also the southeast quarter of the northeast quarter of section 33, township 15, range 12, less two or three acres off the northwest corner of said southeast

quarter of said northeast quarter. Said two or three acres being enclosed by hedge, to have and to hold and enjoy, but that said real estate not to be sold or mortgaged by my said son Waldo Otho Weaver, during his lifetime."

(The deduction of a seven or eight acre strip of the *northwest* quarter of 33-15-12 does not make sense, but that point is immaterial here.)

The fifth paragraph of the will disposes of some 456 acres in favor of Glen Herald Weaver, in terms with which we will not be concerned except to note that these lands, too, like those mentioned in the fourth paragraph of the will, are "not to be sold or mortgaged by my son or his guardian during the lifetime of my son Glen Herald Weaver." The eighth paragraph makes further disposition of these lands in the event Glen Herald dies without issue.

The seventh paragraph of the will makes generous provision for the testator's widow—promissory notes, mortgages, bonds and securities, corporation stocks, and all claims and accounts to be the property of Louisa Weaver with full right to enjoy the same as long as she remained his widow. These bequests, together with certain undescribed lands, were inventoried in the probate court as the widow's share at $47,561.75.

The terms of the sixth paragraph of the will, in part, read:

"Sixth, I will, devise and give to my wife, so long as she shall remain my widow, Louisa Weaver, all of the rest and residue of my land and interest in land and real estate not herein before willed and devised, wherever situated, that I may die seized of  . . ."

Some years after the death of the testator, Waldo Otho Weaver became a bankrupt and his interest in the northeast quarter of section 4-16-12 and the southeast quarter of northeast quarter of section 33-15-12, described in the fourth paragraph of his father's will, was sold and conveyed by the trustee of Waldo's bankrupt estate to Esther M. Chatterton, defendant herein. The pleadings formulated an issue as to the extent of the interest conveyed to defendant by that conveyance. Plaintiff claimed that the interest in the lands which her son received by the fourth paragraph of the will and which was sold by the trustee was a life interest, and that the remainder interest was devised to herself under the sixth paragraph of the will quoted above. Defendants alleged that the fourth paragraph of the will devised a fee simple estate in those lands to Waldo Otho Weaver which had passed by the trustee's conveyance to Esther M. Chatterton and her husband.

The cause was, tried by the court. Considerable evidence of more or less probative force was adduced, and the trial court gave judgment for plaintiff, accompanying it with a memorandum opinion containing findings of fact and conclusions of law.

Defendants bring the cause here for review, assigning errors which chiefly center about the trial court's construction of the fourth and sixth paragraphs of the will.

At the outset appellants invoke the statutory rule, G. S. 1935, 22-258 (now superseded by G. S. 1939 Supp. 59-614), which provides that every devise of real estate shall be construed to convey all the estate which the testator could lawfully devise, unless it clearly appears that he intended to convey a less estate. Appellants argue that the text of the will does not make it clearly appear that the testator intended to convey less than a fee simple estate to his son Waldo Otho Weaver.

This court has often declared that all the pertinent terms of the will should be construed together. · (*Jack v. Severns,* 149 Kan. 229, 86 P. 2d 514; *Zabel v. Stewart,* 153 Kan. 272, 109 P. 2d 177.) It is not essential that the extent or character of a grant, devise or bequest be set down in a single paragraph of a will. Not infrequently a testator's intention can only be clearly understood by giving due consideration to several paragraphs of his will. (*Morse v. Henlon,* 97 Kan. 399, 155 Pac. 800, syl. ¶ 2; *Bierer v. Bierer,* 121 Kan. 57, 245 Pac. 1039; *Johnson v. Muller,* 149 Kan. 128, 86 P. 2d 569; *Pedroja v. Pedroja,* 152 Kan. 82, 102 P. 2d 1012.) Here the fourth paragraph of the will gives and devises to Waldo the lands described "to have and to hold and enjoy," but that said real estate is not to be sold or mortgaged. It is argued that this restriction upon Waldo's power to sell or mortgage is void, since the testator did not provide in some effective way to enforce that restriction, as suggested in *Wright v. Jenks,* 124 Kan. 604, 609-610, 261 Pac. 840, syl. ¶ 3; *Newell v. McMillan,* 139 Kan. 94, 30 P. 2d 126; *Guarantee Title & Trust Co. v. Siedhoff,* 144 Kan. 13, 58 P. 2d 66, and other familiar cases.

Conceding that the attempted restriction upon the right or power of Waldo to sell or mortgage the lands described in the fourth paragraph of the will is void, then the words "but that said real estate not to be sold or mortgaged by my said son Waldo Otho Weaver," should be disregarded entirely, and the remaining language of the paragraph devises to Waldo the described lands "to have and to

hold and enjoy . `. . during his lifetime." The words "during his lifetime" are an adverbial phrase which qualifies the infinitive verbs "to have and to hold and enjoy." They would be meaningless if limited to the restriction forbidding Waldo to sell or mortgage the lands during his lifetime, for only the living, not the dead, have capacity to sell or mortgage.

Reasoning thus, we think the effective language of paragraph four of the will does make it clear that a less estate than one in fee simple was intended to be conveyed. Plainly and clearly the estate devised to Waldo was a life estate. We can think of no additional words the testator might have used to make his intention more clear. Moreover, the language of the sixth paragraph of the will must not be ignored. Its language strengthens, if that were needed, the conclusion we are forced to reach. The devise of a life estate to Waldo does not leave a partial intestacy—which is a result the courts strive to avoid wherever possible in construing a will. The sixth paragraph devises to the widow "all of the rest and residue of [the testator's] land and interest in land and real estate not hereinbefore willed and devised." And so by fair and clear construction of paragraphs four and six of the will, a life estate in the lands in dispute was devised to Waldo and the remainder estate to his mother, plaintiff herein. As she is now 85 years of age, the possibility that such remainder estate may yet be defeated by her remarriage need not be considered.

The judgment is affirmed.

SMITH, J. (dissenting): I am unable to agree with the conclusion reached by the majority. I agree with the legal principles laid down for the construction of a will to the effect that the will should be construed as a whole and the evident intention of the testator should govern. I cannot agree, however, that the words "during his lifetime" are an adverbial phrase which qualifies the infinitive verbs "to have and to hold and enjoy." As I read this will, the words "during his lifetime" should be disregarded just as the majority opinion states the words "but that said real estate not to be sold or mortgaged by my said son Waldo Otho Weaver" should be disregarded. It seems to me the punctuation as well as the sentence structure requires that conclusion.

ALLEN, J. (dissenting): Under the fourth paragraph of the will,

did the devisee Waldo Otho Weaver receive a fee simple or a life estate in the land therein described? This is the question to be determined.

To ascertain the intention of the testator, the will must be read as an entirety in the light of the circumstances of its formulation.

The will was executed in 1920 and the testator died in 1931. In 1920 the testator had a wife and three living children—a daughter and two sons. The son Waldo was thirty years of age and had three children; the daughter Cora had three children, and the son Glen was eleven years of age.

The testator owned a large amount of real and personal property. The inventory shows the following:

|  | Estate | Disposition |
|---|---|---|
| "Real property | $39,865.00 | |
| Personal property | 45,808.00 | |
| Total | $85,673.00 | |

|  | Appraisal |
|---|---|
| Legacy to daughter Cora | $15,000.00 |
| Legacy to son Waldo | 3,000.00 |
| Real estate to Waldo and Glen | 20,112.00 |
| Balance of estate, both personal and real, to widow | 47,561.75 |
| Total | $85,673.00" |

The widow testified as to the land owned by the testator: "Concerning the land he gave to Waldo and Glen, she testified she did not think it was equal to half the land he had."

In paragraph four the land devised to Waldo was (about) 350 acres, and in paragraph five the land devised to Glen was stated as "456 acres in all." It would appear, then, that the testator owned about 1,600 acres of land worth $39,865, and personal property worth $45,808.

The testator made provision for his wife and children as follows:

By the second clause of his will he gave $15,000 to his daughter Cora, and by the third clause $3,000 to Waldo.

The devise of land to his son Waldo is in the fourth clause set out in the majority opinion.

The remaining portion of the will is important. Clauses five to ten inclusive provide:

"Fifth, I will, give and devise my son Glen Herald Weaver (description), and being about 456 acres in all, and not to be sold or mortgaged by my son or his guardian during the lifetime of my son Glen Herald Weaver.

"Sixth, I will, devise and give to my wife, so long as she shall remain my

widow, Louisa Weaver, *all of the rest and residue of my land and interest in land and real estate not herein before willed and devised,* where ever situated, that I may die seized of owned or be entitled to, but in the event that my said wife Louisa Weaver, shall remarry after my death, then all real estate herein devised to her shall upon the marriage of my widow Louisa Weaver, I give, will and devise all of said real estate and interest in real estate, share and share alike to my sons Waldo Otho Weaver, and Glen Herald Weaver. (Italics inserted.)

"Seventh, I will, give and bequeath so long as my widow Louisa Weaver shall remain my widow after my death, all promissory notes, all real estate mortgages, all personal property mortgages, all bonds and securities, all corporation stocks, all interests and stocks and all claims and accounts, that I own or may be entitled to at the time of my death, to be the property of my wife Louisa Weaver with full right to enjoy the same so long as she remains my widow, but upon the remarriage of my wife Louisa Weaver, then and in that event, I will, give and bequeath all of the moneys, promissory notes, mortgages, bonds, stocks and interests that I may have and claim and accounts and moneys due me as aforesaid given to my wife under this will upon the remarriage of my wife, to my two sons Waldo Otho Weaver, and Glen Herald Weaver, share and share alike.

"Eighth, I will, devise and give, all of the real estate, herein before devised, willed and given, Glen Herald Weaver, to my wife Louisa Weaver, upon the death of my son Glen Herald Weaver, dying without issue of his body, to be the property of my wife Louisa Weaver, during her life time, if she shall remain unmarried, but in the event of the death of my son Glen Herald Weaver without issue and in the event that my wife Louisa Weaver, should remarry, then upon her remarriage and in that event, all of the real estate inherited by my said wife, devised herein to my said son Glen Herald Weaver, I devise and bequeath and give to my son Waldo Otho Weaver.

"Ninth, I do appoint, and constitute my wife Louisa Weaver, guardian of the person and estate of my minor son Glen Herald Weaver, during his minority.

"Tenth, I do appoint, and constitute my wife Louisa Weaver and my son Waldo Otho Weaver, executors of this my last will and testament."

I think the fourth paragraph of the will created a fee simple estate in the land therein described in the son Waldo.

1. Our statute G. S. 1939 Supp. 59-614 provides:

"Every devise of real estate shall pass all the estate of the testator therein, unless it clearly appears by the will that he intended a less estate to pass."

This statute certainly raises a presumption that an estate in fee simple was created. The language in paragraph four is apt and appropriate to create a fee simple estate and it cannot be contended that "it clearly appears the testator intended a less estate to pass to the devisee."

2. Ordinarily testators make equal distribution among their

children. Hence, the rule is that a construction which results in, or tends toward equality between beneficiaries will be preferred. (69 C. J., p. 102.)

In the will before us the daughter received $15,000 in cash—the real estate devised to the two sons was appraised at $20,112. We may safely assume the land devised to Waldo in paragraph four was of the value of $10,000. No reason is apparent why he should have been cut off with a mere life estate in the land. No motive is suggested why the testator would reduce his portion to a pittance. On the contrary, he was named as one of the executors and evidently enjoyed the trust and confidence of his father. Moreover, the fact that in other paragraphs in the will, Waldo was given contingent interests is proof that he was in high favor with the testator. His sister Cora received $15,000 in cash and his brother received real estate of the value of $10,000. With what show of reason, then, can it be suggested that the eldest son—the one chosen as joint executor —was to have a mere life estate in property of the value of $10,000 out of an estate appraised at more than $85,000? It is probable the value of the land given Waldo was much less than the land devised to Glen, and the legacy of $3,000 was intended to equalize the gifts. This is an additional proof that Waldo was to receive the absolute title to the land in clause four.

3. Waldo had three children. Having given real and personal property to the widow of the value of $47,561.75, was it the intention of the testator to give a life estate to Waldo in paragraph four with a remainder to the widow?

The normal testator might, indeed, have limited a life estate to Waldo with a remainder to Waldo's three children, but having made generous provision for his wife, it seems improbable that he would give the remainder to the widow rather than to Waldo's children.

4. Under paragraph six, if the widow should remarry, the lands devised therein to her are to pass to the two sons. Did the testator take away from Waldo the ultimate fee in the land described in paragraph four and by paragraph six direct that one-half would be returned to him if the widow should remarry?

5. That it was the intention to give the son Waldo a mere life estate with a remainder to the widow appears improbable when we examine the provisions of paragraphs 6, 7 and 8.

In paragraph six, the testator devised to his widow "all of the rest

and residue of my land and interest in land and real estate not herein before willed and devised, where ever situated, that I may die seized of owned or be entitled to, . . ."

In paragraphs 4 and 5 the testator devised to his sons Waldo and Glen about 800 acres of land. The widow testified that the land devised to the two sons "was not equal to half the land he had." The language above quoted from paragraph six therefore directly referred to all his land not devised to Waldo and Glen under paragraphs 4 and 5. While the language was broad enough to include any other land the testator might acquire before his death, it expressly excluded the land "herein before willed and devised."

6. It is submitted that the clause in paragraph four "said two or three acres enclosed by hedge" means no more or less than that the two acres excepted from the southeast quarter of the northeast quarter of section 33 was enclosed by a hedge.

The clause in restraint of alienation was in common form. The phrase "during his life time" could be eliminated without changing the meaning in any way.

In Gray "Restraints on Alienation," p. 279, it is said:

"Any provision restraining the alienation, voluntary or involuntary, of an estate in fee simple or an absolute interest in chattels real or personal, whether legal or equitable, is void."

The restraint in paragraph four was against voluntary alienation. There was no attempted restraint upon involuntary alienation. As the appellants claim under the deed in bankruptcy—an involuntary alienation—we are not called upon to determine the nature or extent of the voluntary restraint attempted.

7. In the majority opinion the court states the general rule that the intention of the testator is to be ascertained from a consideration of all the pertinent terms of the will. I have set forth above some of the factors that should be considered in the construction of the will. I respectfully submit these factors are material and that they were ignored in the majority opinion.

From the best consideration I can give to the matter in the brief time available, the majority opinion has achieved two results: (1) it has fixed the destination of the property involved in a manner never dreamed of by the testator, and (2) it has enabled the bankrupt to escape the payment of his debts.