No. 32,909

CLARENCE C. CRESS, *Appellant*, v. MARTHA CRARY HAMNETT et al., *Appellees* and *Appellants*.

(58 P. 2d 61)

Opinion filed June 6, 1936.

*Matt Guilfoyle, Thornton D. Scott* and *John H. Lehman,* all of Abilene, for the appellant.

*Arthur Hurd* and *Harold Bolton,* both of Abilene, for the appellee Martha Crary Hamnett.

The opinion of the court was delivered by

BURCH, C. J.: The action was one for partition of land. The question in the case was whether plaintiff and others of a class to which he belonged, who were made defendants, had interests in the land. A demurrer to plaintiff's petition, and demurrers to answers of defendants in the same situation as plaintiff, were sustained, and this appeal followed.

On April 11, 1891, Arthur B. Crary, the then owner of a quarter section of land, conveyed the land to George S. Crary by an instrument in form a warranty deed, with this exception: Following the granting clause appeared a proviso which reads:

"Provided, and this grant is upon the express condition that if the said George S. Crary dies without issue then and in that event the remainder of

said estate in fee simple shall go to the following named persons, to wit: Martha Crary and Abilgail Cress."

Abigail Cress died intestate in 1933, leaving a husband and children. The husband died intestate in 1934, and the children of Abigail Cress are her successors in interest. George S. Crary died without issue in July, 1935. Clarence C. Cress, an heir at law of Abigail Cress, commenced the action for partition against Martha Crary Hamnett, who is the Martha Crary mentioned in the deed. Plaintiff's brothers and sisters were joined as defendants.

Martha Crary Hamnett claims the land as survivor of the joint tenancy created by the deed; contingent on the death of George S. Crary without issue.

The statute of this state abolishing joint tenancies became effective May 20, 1891, a little more than a month after the deed referred to became effective. It is conceded that if the interest of Martha Crary and Abigail Cress was a vested interest, the statute abolishing joint tenancies could have no effect, but it is claimed the interest was contingent, and the law in effect when the interest became vested governs.

The purpose of the grantor in the deed was to make an effective conveyance of his entire estate in the land. George S. Crary took in fee simple if he died leaving issue. If he died without issue, what the grantor designated as the remainder in fee simple went to Martha Crary and Abigail Cress, as joint tenants. Their interest over was an executory interest after an estate in fee simple defeasible. But, treating the portion of the estate to be enjoyed after George S. Crary's death if he died without issue, as the grantor considered it, and as it is treated in the briefs of counsel, that is, as a remainder in fee, the remainder was contingent under the uniform decisions of this court.

When the deed was executed nobody could tell whether Martha Crary and Abigail Cress would ever get the land. While George S. Crary would certainly die, whether he would die without issue was uncertain, and in fact continued to be uncertain until a time contemporaneous with his death. Issue might be born the moment before he died. In that event, the issue would take. He might not have issue. In that event, Martha Crary and Abigail Cress would take. But while he lived, there was no particular person in existence who had a present vested right to enjoyment if the precedent estate were to come to an end.

Martha Crary Hamnett cites but one Kansas case, *Bunting v. Speek*, 41 Kan. 424, 21 Pac. 288, to support her contention she and Abigail Cress took a vested remainder. The authority of *Bunting v. Speek* was laid bare in the opinion in the case of *Kirkpatrick v. Kirkpatrick*, 112 Kan. 314, 211 Pac. 146. In that opinion, the difference between a vested remainder and a contingent remainder, under the land law of this state, was explained. However, in the opinion in *Bunting v. Speek* appears the following:

"In all these cases and in the textbooks, it is always said that before the remainder is vested, 'the person must be ascertained'; 'the person must be certain and determinate'; and these expressions mean that the person must be one to whose competency to take, no further or other condition attaches; one in respect to whom it is not necessary that any event shall occur, or condition be satisfied, save only that the precedent estate shall determine." (p. 431.)

In this instance there was always the condition on competency of Martha Crary and Abigail Cress to take, that George S. Crary leave no issue at his death.

The statute of 1868, relating to conveyances, is still in force and reads:

"Conveyances of land, or of any other estate or interest therein, may be made by deed, executed by any person having authority to convey the same, or by his agent or attorney, and may be acknowledged and recorded as herein directed, without any other act or ceremony whatever." (R. S. 67-205.)

This statute was interpreted in the case of *Miller v. Miller*, 91 Kan. 1, 136 Pac. 953:

"The words, 'conveyances of land,' mean, of course, the land itself in fee simple absolute. The words, 'any other estate or interest therein,' include estates of freehold and less than freehold, of inheritance and not of inheritance, absolute and limited, present and future, vested and contingent, and any other kind a grantor may choose to invent, consistent, of course, with public policy." (The rule against perpetuities.) (p. 4.)

In that case it was held the statute abolished common-law restrictions on creation of future interests in land, and abolished restrictions on alienation, not suitable to allodial tenures and modern conveyancing, and made transfers of land as free as possible.

The deed of Arthur B. Crary gave Martha Crary and Abigail Cress something. The deed gave them the land in fee simple, under certain circumstances, and they necessarily acquired an interest in the land by the deed. As George S. Crary would grow older and probability of his having issue would grow less, the value of that interest would increase until it approached value of the land, and

there was always the chance of early death without issue. Therefore the interest in the land constituted a species of property. The property was acquired when the deed became effective, which was on delivery. At that time, joint tenancies, with the characteristic of survivorship, existed in this state. If George S. Crary had died at once, Martha Crary and Abigail Cress would have taken as joint tenants. The nature of the interest each one would take, if she did take, was fixed by the deed, and the legislature was powerless by subsequent act to deprive either one of any element of the interest created by the deed.

Plaintiff cites the following from Corpus Juris:

"The legislature has no power to alter or to destroy by statute the nature or tenure of vested estates in property. Indeed, authority is not wanting to the effect that a contingent remainder may not be impaired or destroyed by a statute passed after its creation, but the better opinion is that contingent remainders may be impaired or abolished at any time before they become vested." (12 C. J. 959, § 496.)

A single case is cited as establishing the better opinion, the case of *Moore v. Reddel*, 259 Ill. 36, 102 N. E. 257 (1913). In that case the court had under interpretation a deed made in 1881. Proper interpretation depended on the statute of Illinois concerning conveyances. In the opinion the court said:

"The statute concerning conveyances was enacted January 31, 1827, and as revised appeared as chapter 24 of the Revised Statutes of 1845, and section 6 was repeated in the same language in chapter 30 of the Revised Statutes of 1871-'72. The manifest intention of the general assembly was to get rid of estates tail . . . , and to substitute for the fee tail a life estate in the grantee, with remainder in fee simple to those who would take such remainder by the terms of the grant." (p. 43.)

The result is, the subject to which the supposed better opinion related did not arise, could not arise, and was not discussed or referred to. All that occurred was, the court adopted an interpretation of the statute apparently at variance from that which had previously prevailed.

The poorer opinion cited in Corpus Juris as denying power of the legislature to destroy or impair a contingent remainder, created before enactment of the statute, was that of Baker, circuit judge, in the case of *Aetna Life Ins. Co. v. Hoppin*, 214 Fed. 928, circuit court of appeals, seventh circuit (1914). In that case, the court had under interpretation a deed made in 1862, and the proper interpretation depended on the law of Illinois as it stood in 1862. The case of

*Moore v. Reddel* was called to the attention of the court. The court said:

"Though there were no apposite Illinois decisions before 1862, the law of Illinois, a common-law state, is to be regarded as settled in 1862 in accordance with the settled common law. . . . If this Fassett deed in 1862 conferred upon defendants a contingent remainder in fee simple under the law then in force, that right in real estate could not be impaired or destroyed by subsequent legislation or subsequent decision.

"*Moore v. Reddel,* if it does conflict with *Aetna Life Ins. Co. v. Hoppin,* can be allowed no effect. On this writ the question is whether the trial court committed error in looking to the evidences of the Illinois law in force in 1862. Error cannot be predicated on the trial court's failure to foresee that the supreme court of Illinois would not merely overturn a rule of property as declared shortly before by the same judges, but would undertake to abrogate the common law—a right reserved by chapter 28, § 1, exclusively to the legislature." (p. 935.)

Whatever may be said of this decision as an authority, it did mention the subject in connection with which it was cited.

Plaintiff cites and relies on the decision in the case of *Hamblin v. Marchant,* 103 Kan. 508, 175 Pac. 678 (1918). In that case the statute depriving a widow who killed her husband of right to take property by descent from her husband was upheld. The killing occurred after the statute was enacted. The legislature might today enact a statute of descents and distributions which would take from living children the right of inheritance from their parents, now given them by law. This is so, because what the legislature gives, the legislature may take away, but the legislature could not, by subsequent enactment, take away from Martha Crary and Abigail Cress what Arthur B. Crary had previously given them by deed, an instrument sounding in contract.

Another and an all-sufficient reason why the interests created by the deed of Arthur B. Crary were not affected by the statute converting joint tenancies into tenancies in common is, that there is not the slightest indication the statute was intended to be retroactive, and the statute operated to destroy survivorship under instruments, in form creating joint tenancies, executed after the statute was enacted and not otherwise.

As indicated, the deed in question has been considered as the grantor expressed himself and as the case has been presented here. It may be noted that, because of the confusion in the law caused by use of the term "contingent remainder," the term has been omitted from the Restatement of the Law of Property. According to the

Proposed Final Draft of the Restatement, considered at the annual meeting of the American Law Institute on May 7 and 8 of this year, the deed created in George S. Crary a fee simple defeasible, and created in Martha Crary and Abigail Cress a joint estate in an executory interest.

The judgment of the district court is affirmed.