No. 33,390

D. W. RAGLAND, *Appellee*, v. DELPHA REA RAGLAND, SHIRLEY MAE RAGLAND, MARTIN EUGENE RAGLAND and EDWARD WAYNE RAGLAND, Minors, *Appellants;* W. F. HOPPER, *Appellee.*

(68 P. 2d 1100)

Opinion filed June 12, 1937.

*John F. Fontron,* of Hutchinson, guardian *ad litem,* for the appellants.
*C. E. Branine* and *H. R. Branine,* both of Hutchinson, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: This was an action to quiet title to an eighty-acre tract of land in Reno county. It was brought by the father against his four minor children, the oldest of whom was seven years

of age. The holder of an oil and gas lease was also made a defendant, but his claim is the same as that of the plaintiff, that the children have no interest in the land, contingent or otherwise.

The first two links in the chain of title were by inheritance through intestate estates about which there is no question. The next is a deed conveying a life estate subject to four conditions, and the question here involved is the correct interpretation of the third one of those conditions, as to whether or not it created a contingent remainder. The trial court held that it did not, and that the children had no interest whatever in the land, but the fee title was in the plaintiff. The children, by their guardian *ad litem*, are appealing to this court.

Aaron Wright owned this eighty-acre tract many years ago. He and his wife, Catherine, lived thereon. They had no children. One of Catherine's sisters died leaving a son, Milo, and a daughter, Ethel. The daughter was between one and two years old, and Mr. and Mrs. Wright took Ethel into their home and reared her as their own child, but no formal adoption papers were executed. Aaron Wright died intestate in 1921, and the land in question which they were occupying as a homestead descended naturally to the wife, Catherine. She died intestate a few months later in August, 1921, leaving four brothers and two sisters living, and Milo and Ethel, the only children and heirs of the deceased sister, and they properly and legally inherited this land, as neither of Catherine's parents were living. On September 10, 1921, all of them, except Ethel, joined in a quitclaim deed conveying to Ethel a life estate in this eighty-acre tract.

The first condition contained in the deed was to the effect that if Ethel is living on the 10th day of September, 1941, then said life estate shall terminate, and in that event the parties of the first part do hereby remise, release and quitclaim unto her said property as her sole and separate property. The second condition forbids the execution of any mortgage or lien against the property by her during said twenty-year period. The fourth condition was that should she die prior to September 10, 1941, and leave no offspring the life estate shall then be terminated and the property shall remain vested in the grantors or their heirs. The third condition was as follows:

"3. Should the said party of the second part die prior to September 10, 1941, and leave offspring said life estate shall be terminated, and in that event said parties of the first part do hereby remise, release and quitclaim said property unto said party of the second part, or her offspring, or their heirs."

Ethel did not see this deed until after it was recorded, but accepted it. She was then about twenty-four years of age, was not married, but was living on the eighty-acre tract. She later married the plaintiff and they made this land their homestead. After they became the parents of some of the defendant children the same grantors of the original deed, except two who had died and in their stead their heirs, the same being unquestionably the legal heirs of Catherine Wright, executed another quitclaim deed to Ethel, conveying to her the said land, including all title, estate and reversionary interest not conveyed under the original deed. This deed was recorded and it takes out of the case the question of the reversionary interest of the grantors and leaves for consideration only the question of contingent remainder, if any, in the children by reason of the third condition above quoted from the original deed.

After that, and on September 26, 1936, Ethel conveyed this land to her husband, D. W. Ragland, and they have continued to occupy it as their homestead. The oil and gas lease was issued to W. F. Hopper, April 9, 1932.

While we are concerned only with the interpretation of the third condition above quoted, a comparison of its provisions with conditions one and four plainly shows that the grantors were thinking particularly of two contingencies—whether or not Ethel should live the full period of twenty years, and whether or not she would leave offspring if she died earlier than September 10, 1941. If she lived throughout that period the life estate would terminate and she would become the owner in fee simple. If she should die earlier, without offspring, the remainder would revert to the grantors, but if she should die earlier with offspring, the life estate would terminate and the property would go to the offspring or their heirs. The grantors were surrendering their reversionary interests at the end of twenty years or earlier if she died earlier leaving offspring. This is along the line of an attempt to gather the intention of the grantors from the four corners of the instrument. If the matter of their being offspring makes no difference, why should there be any difference in the arrangement between that at the end of the twenty-year period and at an earlier date in case of death?

This comment is based upon the theory that condition three gave the remainder to "her offspring or their heirs," but the exact language is a conveyance of said property "unto said party of the second part, or her offspring, or their heirs." It is hard to consider the convey-

ance being to the party of the second part when it is based upon the condition of her death. She could not take the fee or remainder in case of her death. The title would necessarily vest in some living person. Plaintiff ably reasons this matter as if condition three were a different and subsequently executed deed, Ethel already having been given by the first part of this deed a life estate, and then as if later while she is still unmarried and without offspring the grantors had executed and delivered to her another deed conveying the land subject to said life estate, to her "or her offspring, or their heirs." This second deed, while recognizing the conveyance of the life estate, would necessarily terminate it upon the two contingencies—death and offspring.

Plaintiff recognizes the distinction between this case and one where a life estate is deeded to A and remainder to B or his issue, urging that in the case at bar the deed cannot be construed to grant a remainder in the alternative to her or her offspring, and that the grantors must have intended to convey the remainder estate to her, and the use of the words "remise, release and quitclaim" shows the intention to make a present conveyance to an existing grantee. This, it seems to us, could have been accomplished without making it contingent upon her death. For instance, it could have been conditioned upon her having offspring, in which case the life estate could have been terminated and the property go "unto said party of the second part, or her offspring, or their heirs."

In the interpretation of the intention of the grantors by the language contained in condition three, we must not overlook the existence of condition four immediately following condition three, which is positively inconsistent with her receiving a remainder estate by condition three when the deed was executed and delivered, because the grantors in condition four retained the right to the remainder themselves in case of her death without offspring prior to 1941, which was not released until 1936 by the second quitclaim deed.

Plaintiff cites *Cress v. Hamnett,* 144 Kan. 128, 58 P. 2d 61, which concerns the conveyance of fee title to Crary by warranty deed with the condition in it that if Crary dies without issue the remainder shall go to certain others, and it was held that Crary took a fee-simple defeasible and the others took an executory interest. It was said concerning such remainder that—

"Their interest over was an executory interest after an estate in fee simple defeasible. But, treating the portion of the estate to be enjoyed after George

S. Crary's death if he died without issue, as the grantor considered it, and as it is treated in the briefs of counsel, that is, as a remainder in fee, the remainder was contingent under the uniform decisions of this court." (p. 129.)

Reference is made to Restatement of the Law of Property, section 27, comments "d" and "e" (p. 77), where the owner of land "makes an otherwise effective conveyance *inter vivos* thereof 'to B or his heirs.' B has an estate in fee simple absolute." Also, "in the absence of evidence of a contrary intent a limitation in a conveyance *inter vivos* of a future estate 'to B or his heirs' creates an estate in fee simple absolute in B." There are, however, in the case at bar allegations "of a contrary intent."

It is claimed by plaintiff that even if the words "party of the second part" were in effect stricken out as grantee of condition three, the conveying of the remainder to her offspring would give her an estate tail and she would therefore be able to convey to her husband a fee-simple title. The case of *Howe v. Howe,* 94 Kan. 67, 145 Pac. 873, is cited in this connection by plaintiff, and it is apparently one of those relied upon largely by the trial court in holding the title of the plaintiff to be one in fee simple. In that case the conveyance was a fee-simple title from a father to his five sons, "their blood heirs and assigns." The warranty was to "said parties of the second part, their heirs and assigns," reserving a life estate for the grantor, and it was held:

"(1) The intention of the grantor is to be gathered from the four corners of the instrument. (2) The grantor intended to make a present grant of the land to the five persons named as parties of the second part, reserving to himself a life estate. The grantees were to have power to convey, but if no conveyance were made the land was to descend to their blood heirs only. (3) The words 'blood heirs' were words of limitation and not words of purchase. The limitation was void, and the grantees took estates in fee simple and not estates for life." (Syl.)

This case is discussed in the opinion in *Kirby v. Broaddus,* 94 Kan. 48, 145 Pac. 875, which was handed down the same day, and application of it was extended to a case where the deed merely calls the title bestowed a life interest.

This does not approach the facts in the case at bar. Considering the deed in the case at bar from the four corners of the instrument as to the intention of the grantors on the day the deed was executed, several years prior to there being any offspring and fifteen years before the second deed was given relinquishing the reversionary rights of the grantors, one cannot call with safety the first estate

granted, together with the provisions of condition 3 of the deed, anything but a life estate. It is not a matter of merely calling it such, but we can find no right to entirely ignore condition 3 as being void. We do ignore the attempt therein to grant to the second party an estate after her death, and we read that clause by omitting those words.

Reference is made to the opinion in the recent case of *Newell v. McMillan*, 139 Kan. 94, 30 P. 2d 126, but there a fee title was conveyed subject to a reservation of a life estate in the grantor. The case of *Moherman v. Anthony*, 106 Kan. 457, 188 Pac. 434, is hardly in point, because in that case the land was conveyed for a valuable consideration to the mother and her children, and later in the deed restrictions and limitations were attempted to be made as to inheritance and reversion, and it was held that the mother did not acquire the fee in the land conveyed and that the children acquired their interests as grantees and not as heirs.

In the case of *Abbott v. Perkins*, 90 Kan. 45, 132 Pac. 1177, it was held that—

"A deed recited that the first parties, for and in consideration of love and affection for the second party, their daughter, and to furnish support for her, did sell a certain tract of land, describing it, 'unto the said party of the second part for life and upon her decease unto to her children should she die leaving issue absolutely, and should she die leaving no issue, then unto the heirs of the party of the first part. The said land and premises to be held by the said Lydia Ann Abbott solely under and by virtue of these presents without power to her to sell, mortgage or convey any interest in the said premises, nor to sell or encumber her life interest therein.' *Held*, that the instrument conveyed only a life estate in the land without power in the grantee to alienate or encumber it; and *held*, further, that the provision restricting the power of the grantee to sell, mortgage or encumber the land is not inconsistent with the grant nor invalid because of repugnancy." (Syl.)

In arriving at the intention of the grantors in the case at bar we must do so from the four corners of the instrument of September 10, 1921, at the time of making it, and not as it might appear to have been their intention seven or more years later when there was offspring in existence, or fifteen years later than the execution of the deed when they executed a second deed.

We conclude that the words "unto said party of the second part" are inconsistent with and repugnant to the other provisions of the deed and should be disregarded, that Ethel took only a life estate with a possible remainder in her offspring or their heirs, depending upon the contingency of her dying before September 10, 1941.

The petition in this action contained two causes of action. The decision reached by the trial court made it unnecessary for any ruling or finding to be made on the second cause of action which is in the alternative, that in the event it should be found and determined by the court that the defendant minors and persons represented by them have or will have hereafter any interest in the described real estate, contingent or otherwise, then plaintiff prays that a trustee be appointed by the court for the purpose of leasing said real estate for development of oil and gas, with power under the direction of the court to handle and preserve such contingent interests in the oil and gas on, in and under said real estate.

Now that we find the deed in question gave the offspring of Ethel and their heirs a contingent interest in the real property, in case Ethel should die prior to September 10, 1941, the alternative prayer of the plaintiff should be considered and granted unless there is some reason to the contrary not mentioned in the briefs, and a trustee should be appointed to look after the oil and gas interests that may possibly accrue to such offspring and their heirs during such contingent period, with full power to act in such matters under the direction and supervision of the court.

The judgment is reversed with direction to further conduct the trial under the second count of the petition.

ALLEN, J. (concurring): I agree that the grantee in the deed did not take an estate tail in the land conveyed.

The deed recites that the parties of the first part "do by these presents, remise, release and quitclaim unto the said party of the second part a life estate in and to the following property," etc.

The instrument contained the following provisions:

"Said life estate shall be subject to the following conditions:

"1. If the party of the second part is living on the 10th day of September, 1941, then said life estate shall terminate, and in that event said parties of the first part do hereby remise, release and quitclaim unto said party of the second part said property as her sole and separate property.

"2. That during said twenty years from September 10, 1921, to September 10, 1941, no mortgage or lien can be executed by the party of the second part and constitute a lien against above-described property, except with the consent of the parties of the first part.

"3. Should the said party of the second part die prior to September 10, 1941, and leave offspring said life estate shall be terminated, and in that event said parties of the first part do hereby remise, release and quitclaim said property unto said party of the second part, or her offspring, or their heirs.

"4. Should the party of the second part die prior to September 10, 1941, and leave no offspring, then the life estate shall be terminated and this property shall remain vested in the grantors herein or their heirs."

What estate did the grantee, Ethel Dear, take in the land?

Under the settled rules of construction the meaning expressed by the language employed is to be derived from reading such conveyance as an entirety. Each sentence and paragraph is a single element in one whole. It is reasonable to infer that their modifying force upon each other was intended by the grantors, and this inference must be given effect by this court. When the various clauses and paragraphs, read seriatim, involve repugnancies but, read as mutually modifying one another permit a construction as a consistent whole, the latter construction should be adopted.

Thus a fee simple absolute by subsequent language may be cut down to fee simple defeasible, to an estate tail, or to a life estate; in like manner a life estate may be degraded to a term of years. To illustrate: A transfers land "to B and his heirs," but by a later clause provides that "if B shall die without issue living at the time of his death, then to C and D and their heirs." Here the gift over is on a definite failure of issue—the fee simple absolute in the first clause is reduced to fee simple defeasible, with an executory interest in C and D. This has been settled since the case of *Pells v. Brown,* Cro. Jac. 590, was decided in the year 1620, and has been so held in Kansas. (*Platt v. Woodland,* 121 Kan. 291, 246 Pac. 1017.)

But if, after the limitation to "B and his heirs" the subsequent clause should read "if B shall die without issue, then to C and D and their heirs," here the gift over being on an indefinite failure of issue, by necessary implication B takes an estate tail, with remainder in C and D. (Restatement, Property, § 61.) Compare, however, *Cress v. Hamnett,* 144 Kan. 128, 58 P. 2d 61.

If A transfers land "to B and his heirs, but on B's death to go to C and his heirs," the fee simple in B by the first clause is reduced to a life estate. (Restatement, Property, § 108 *f.*)

For other cases where a fee is reduced to a life estate see cases of the type of *Markham v. Waterman,* 105 Kan. 93, 181 Pac. 621.

In the case before us the deed was dated September 10, 1921. The point stressed in each paragraph is that the estate of the grantee is to end at a certain time, to wit, on September 10, 1941. This is the dominant objective. When an estate is to end at a fixed or computable period of time, it creates a term of years and not a life estate. (Restatement, Property, § 112 and illustrations.) The grantee,

Ethel Dear, received merely a term of twenty years. This eliminates any question of an estate tail under the Rule in Shelley's Case.

A term of years is a nonfreehold estate. At common law a limitation to A for twenty years, remainder to B and his heirs, created a present estate in B subject to the term. If the limitation was to A for twenty years, remainder to the heirs of B, here the remainder by the early common law was void as there was no one having a freehold interest to take the seizin. After the rise of executory interests an interest after a term of years subject to a condition precedent was supported by calling it a springing executory interest. Under modern usage these early distinctions have passed and interests following a term of years are denominated remainders. (Restatement, Property, § 156.)

The premises considered, the following points seem clear:

Under paragraph one, Ethel Dear has a term of twenty years; she also has a remainder subject to a condition precedent. (Compare *Klein v. United States*, 283 U. S. 231, 51 S. Ct. 398, 75 L. Ed. 996.) The grantors have a defeasible reversion. If Ethel Dear is living on September 10, 1941, the reversion will shift to her, and she will then have a fee simple absolute.

While a total restraint on a legal life estate is void, that rule does not apply to a term of years.

Under paragraph three, the word "offspring" seems to have caused some perplexity. No doubt the primary meaning of the word "offspring" is the same as "issue." It might denote an unending line of lineal descendants, so a limitation to A for life, the remainder to his offspring might raise an estate tail under the Rule in Shelley's Case. (See *Barber v. Pittsburg & C. Railway*, 166 U. S. 83, 17 S. Ct. 488, 41 L. Ed. 925.) But like the word "issue," the word "offspring" by reason of the context may be used in the sense of "children" or of descendants living at a particular time.

In paragraphs three and four, the word "or" might be translated to mean "and." This is commonly done in an immediate gift to A or his heirs and is permissible where the gift is of a future interest to A or his heirs. Therefore, paragraph three means no more than this: "To Ethel Dear for a term ending September 10, 1941, but if she die before that time leaving offspring, then to her offspring and their heirs." This would give her offspring, including children and grandchildren living on that date, an executory interest.

The most startling thing in the case is the proposal to appoint a

trustee for the unborn children. If the purpose is to extinguish the future interests of living persons and unborn persons created by this deed, attention is called to chapters 11 and 12 of the Restatement of Property, and the particular sections hereinafter cited. In a proper case a judicial sale may be made (sec. 179), and a binding decree may be made as to the future interests of living persons (sec. 180), and of future interests limited in favor of unborn persons (secs. 182, 183). Under the doctrine of representation the owners of these future interests are given their day in court. No authority, statutory or nonstatutory, has been pointed out whereby a trustee could be appointed to represent the owners of such future interests and to make a long-time lease that would bind such interests. Obviously, section 186 has no application. (See, also, *Blocker et al. v. Blocker* [1931], 103 Fla. 285, 137 So. 249; 23 R. C. L. 583-586.)